## EMMA C. BAUMGARTNER v. JOHN E. CORLISS.[1]

### June 9, 1911.

### Nos. 17,137—(126).

**Absolute deed a mortgage — evidence.**

Evidence *held* sufficient to justify a finding that an absolute deed, coupled with a parol defeasance, was executed as security for the payment of an indebtedness incurred by the grantee on behalf of the grantors, and was therefore a mortgage. Anderson v. Anderson, 81 Minn. 329, distinguished.

**Specific performance impossible.**

The grantee in such deed, with the knowledge and for the benefit of the grantors, mortgaged the property to third persons. He subsequently refused to reconvey the property, and this action was brought to compel specific performance. Pending the action the mortgages so executed were foreclosed, from which no redemption was made, so that at the time of the trial title to the property had passed to the purchaser at the foreclosure sale. *Held* that, since performance was impossible, the trial court erred in directing judgment for a reconveyance of the property to the grantors.

**Obligation to redeem.**

The grantors remained in the actual possession and occupancy of the

[1] Reported in 131 N. W. 638.

property during all the time subsequent to the execution of the deed, and the grantee in the deed, having executed the mortgages with their consent and for their benefit, was under no obligation to redeem from the foreclosure.

**Refusal to reconvey — action for breach of contract.**

If grantee's refusal to reconvey the property according to the contract disabled and prevented the grantors from effecting redemption, their remedy is not specific performance, at a time performance is impossible, but damages for the breach of the contract.

**Findings insufficient to justify relief.**

Such relief may be awarded in this action, but the findings now before the court are not sufficient to justify it.

Action in the district court for Wilkin county to recover $600, balance alleged to be due upon a certain contract, and for a deed conveying to plaintiff title to the premises mentioned in the contract. The answer alleged that the title to the lands was conveyed to defendant by the state of Minnesota, upon request of plaintiff, by certain patents; admitted that plaintiff had been in possession of the land, and gathered and converted to her own use the crops raised upon the land, and prayed for judgment against plaintiff for the possession of the land. The case was tried before Flaherty, J., who made findings of fact and as conclusion of law ordered judgment in favor of plaintiff for $511.37, and that defendant execute a conveyance of the premises to plaintiff subject to the mortgages, or, if defendant fail to convey, that plaintiff recover from him the sum of $2,500, the value of said lands above the aggregate of the mortgages. From an order denying defendant's motion for a new trial, he appealed. Reversed and new trial granted, except as to judgment in favor of plaintiff for surplus in defendant's hands.

*Charles S. Marden* and *W. B. Douglas,* for appellant.
*Peterson & Adams* and *Henry G. Wyvell,* for respondent.

BROWN, J.

The facts in this case, without unnecessary detail, are as follows: Plaintiff's husband, John Baumgartner, was, on May 1, 1905, the owner and holder of six certain contracts for the purchase of six

separate, though adjoining, tracts of state land, aggregating two hundred forty acres. Plaintiff and her husband resided upon and cultivated the land as one farm, and part thereof constituted the family homestead. The land, or rather all the right, title, and interest of Baumgartner, had been levied upon and sold under an execution issued upon a judgment rendered against him, and the time of redemption therefrom was about to expire. Baumgartner had no money with which to make redemption, and he could obtain none, for his credit was not good. He sought the aid of a banker, who proceeded to his residence to discuss the question of raising the necessary money. The banker refused to loan the same to Baumgartner, but suggested that, if the land contracts could be turned over and assigned to defendant, who was a near neighbor of the Baumgartners, with good credit, the banker would advance the money on the faith of defendant's connection with the matter. Defendant was then called over to the residence of Baumgartner, the matter was laid before him, and he agreed to lend his assistance. It was then agreed between the parties that the title to the land should be transferred to defendant as security for such advances as he might be required to make to complete the transaction, the same to be reconveyed to plaintiff herein upon his reimbursement. The contracts of purchase were accordingly assigned to defendant, and the banker loaned him money sufficient to redeem from the execution sale; defendant giving his personal promissory note therefor. With the money so raised redemption was duly made. Baumgartner was also indebted to other persons, and payments to the state were due under the contracts, and it was further agreed between the Baumgartners and defendant that the latter should perfect the title, paying to the state the amount due, with interest; the money with which to accomplish the same to be raised by mortgaging the land. Defendant complied with this part of the agreement. The title to the land was perfected in his name, and he executed mortgages thereon to the amount in the aggregate of $3,500. This was $500 more than was necessary to pay all claims against the land. A mortgage for $1,000, together with a second mortgage for $100, representing interest or commissions, was placed upon eighty acres of land, and one for $2,500, with a second commis-

sion mortgage for $284.50, was placed upon the remaining quarter section, or one hundred sixty acres. It was further agreed that defendant should have $100 for his services, which was paid to him from the funds so borrowed. Defendant also reimbursed himself from this money for that borrowed by him from the banker to effect the redemption from the execution sale.

The trial court found, and the finding is sustained by the evidence, that it was agreed between the Baumgartners and defendant that upon the completion of the transactions referred to, perfecting title to the land and discharging the financial obligations of the Baumgartners, defendant should within sixty days thereafter reconvey the land to Mrs. Baumgartner, plaintiff herein. The court also found that the transaction was fully completed, and defendant paid and reimbursed for all advances made by him, prior to January 17, 1906, and that thereafter, in April, 1906, plaintiff demanded of defendant a conveyance of the land to her, and that he pay over to her the balance remaining in his hands after discharging the debts of the Baumgartners, which amounted to $511.37, and, further, that defendant then and ever since has refused either to pay over the balance so in his hands or to convey the land to plaintiff. Soon after the demand and refusal, defendant removed to Canada, where he has since resided. The Baumgartners at all times remained in the possession and occupancy of the property. Thereafter, and on February 18, 1908, defendant, by warranty deed, conveyed the eighty-acre tract of land to one John L. Opfer, a resident of Fargo, in North Dakota. The execution and delivery of this deed was without the knowledge, authority, or consent of the Baumgartners. It was duly recorded in the office of the register of deeds on February 21, 1908. Defendant attempted to convey away the quarter section, but the transaction was not completed. Subsequent to the conveyance by defendant of the eighty acres to Opfer, all the mortgages upon the lands were foreclosed; the second or commission mortgages being the first in order. Plaintiff redeemed from the foreclosure of the commission mortgage upon the one hundred sixty-acre tract, and a proper certificate of redemption was issued to her. She paid the redemption money to the sheriff to redeem from the foreclosure upon the eighty acres,

which was subsequently returned to her, on the ground that Opfer, the holder of the legal title, had previously redeemed from the purchaser at the sale. Thereafter the two principal mortgages were foreclosed, from which no redemption was made, and title to the land thereby passed from both defendant and the Baumgartners. The land is worth $25 per acre.

The action was brought to recover (1) the surplus in defendant's hands, namely, $511.37; and (2) for the specific performance of defendant's contract to reconvey the land to plaintiff. The trial court, upon the facts outlined, ordered judgment, as demanded by plaintiff, for the surplus, and that defendant within thirty days convey title to the land to plaintiff, and in default thereof that plaintiff recover from him the further sum of $2,500, the value of the land in excess of the mortgages placed thereon by defendant. Defendant appealed from an order denying a new trial.

The assignments of error present several questions, all of which are discussed in the briefs, only two of which, however, in our view of the case, require consideration at our hands. Those questions are: (1) Whether the transaction between the Baumgartners and defendant created a trust in lands, or whether, as found by the trial court, it created the relation of mortgagor and mortgagee; and (2) whether the trial court erred in directing a specific performance of defendant's agreement to reconvey, since at the time of the trial title to the land had passed from both parties under the foreclosure proceedings.

1. The first question is resolved against defendant's contention. The trial court found, and the finding is sustained by the evidence, that title to the land was vested in defendant as security for whatever advances it became necessary for him to make to complete the transaction. The case in this respect is unlike Anderson v. Anderson, 81 Minn. 329, 84 N. W. 112. It there appeared that the holder of a contract for the purchase of land caused the title to be conveyed to a third person; the latter executing a mortgage upon the same to secure a loan of money to meet the purchase price. The third person advanced no money, except as it was obtained through this mortgage, and the relation of debtor and creditor at no time existed be-

tween them. In the case at bar, defendant agreed to, and did, incur an indebtedness on behalf of the Baumgartners, thus creating the relation of debtor and creditor. The title was given to defendant to secure that indebtedness. This distinguishes the cases.

2. The serious question in the case is presented by the contention that the court erred in directing judgment for specific performance. We have given this matter careful attention, and reach the conclusion that the learned trial court was in error.

The title to the property passed from defendant some time before the trial of the action under the foreclosures, and he was incapable of conveying to plaintiff title thereto, as the order for judgment requires. A compliance with the judgment is therefore impossible, save by a purchase from the holder of the title under the mortgages. These mortgages were all placed upon the land with the consent of the Baumgartners, and in their interests; and, having permitted the foreclosure to ripen into title by their failure to redeem, defendant cannot now be compelled to reacquire the title and convey it to them. If the mortgages had been wrongfully placed upon the property, for the personal benefit of defendant, and without the consent of the Baumgartners, or if defendant had conveyed it to a bona fide purchaser without their knowledge, the situation might perhaps be different. But the mortgages having been executed for the benefit of the Baumgartners, and to pay obligations owing from them, they were bound as a matter of law to protect the title by redemption from the foreclosure. That they could have redeemed is clear. 27 Cyc. 1032. Perhaps not as a matter of strict legal right, but by an action in equity brought for that purpose.

Defendant was under no obligation to make the redemptions. He occupied the position of mortgagee, and the terms of the contract creating that relation did not provide that he should protect the title to the property from the foreclosures. The title to the property not, therefore, having been lost by any unauthorized act of defendant, or by the failure to perform any legal duty in respect to the protection of the title from the foreclosures, defendant cannot be compelled to restore title to plaintiff. He no longer holds the title and performance is impossible. 36 Cyc. 747.

But it is argued that the retention of the title by defendant and his refusal to reconvey the property disabled plaintiff from effecting redemption; that, inasmuch as the title stood in defendant's name, she was unable to borrow money thereon, and hence that the failure to redeem rests wholly upon the refusal to reconvey. If this be true, plaintiff's remedy is not specific performance, but an action for damages for defendant's breach of the contract. 27 Cyc. 1033.

At the time this action was commenced, plaintiff must have known that defendant could not then convey to her title to the eighty acres theretofore conveyed by him to Opfer; for the deed was of record, and the general rule in such a case is that the court will deny the specific relief and leave the party to his remedy at law. 36 Cyc. 747. However, that conveyance was not the act which disabled defendant from performance at the time of the trial. No title passed by that conveyance, as against plaintiff and her husband, who were in the possession of the land when it was executed, thus giving notice to the world of their rights. Defendant became disabled from performance after the action was commenced, and by the failure of redemption from the foreclosures. It is proper, in a situation of that kind, to retain the case and award damages for the breach of the contract. Fleming v. Ellison, 124 Wis. 36, 102 N. W. 398. But the trial below did not proceed upon that theory, and there can be no affirmance upon the ground that the amount defendant is required to pay in the event of his failure to reconvey the property represents the damages suffered by plaintiff, for she can only recover upon a showing that defendant's failure to perform disabled or prevented her from making redemption. There are no findings upon this feature of the case, and there must be a new trial.

The other questions raised by defendant and discussed in the briefs do not require special mention. We discover no other errors in the record. The contract was made in the interests of plaintiff, who was a party to it, and in consideration thereof parted with her interest in the land. She may therefore maintain the action.

Order reversed, and new trial granted. Inasmuch as that part of the decision of the court below awarding judgment in plaintiff's

115 M.—2.

favor for the surplus in defendant's hands, referred to in the opinion, was without error, the new trial will be limited to the other issues in the case.