RICHARD ELLISON v. JOEL T. ALBRIGHT.

FILED JUNE 6, 1894.    No. 5429.

**Payment:** CONCLUSIVENESS OF RECEIPT AS TO STRANGERS. As against strangers thereto, a receipt is incompetent evidence of the payment thereby acknowledged; for, as against such strangers, such receipt is but the hearsay declaration of the party who signed it, made without opportunity for his cross-examination, and independently of the sanction of his oath.

ERROR from the district court of Thayer county. Tried below before HASTINGS, J.

*C. L. Richards, Marquett, Deweese & Hall,* and *W. H. Morris,* for plaintiff in error.

*W. P. Freeman* and *Ben S. Baker, contra.*

RYAN, C.

In this action as originally brought in the district court of Thayer county Joel T. Albright was plaintiff and Richard Ellison was defendant. Except where otherwise expressly noted the same designation will be applied to the respective parties. In his petition plaintiff Albright alleged

"that on the 19th day of February, 1886, the plaintiff, then being the owner of the southwest quarter of section 28 and the northeast quarter of section 34, all in township 4 north, range 1 west, 6th P. M., in Thayer county, Nebraska, sold and conveyed the same to said defendant, for which defendant agreed to pay plaintiff the sum of $6,400 at that date; that the defendant has paid plaintiff as part consideration for said real estate the sum of $3,930, as follows: The sum of $1,200 thereof by assuming and agreeing to pay one-half part of a mortgage for $2,400 which had been previously given by plaintiff on said northeast quarter of said section 34 and other land of plaintiff; also by assuming and agreeing to pay a mortgage for $1,600 which had been previously given by plaintiff on said southwest quarter of said section 28, and which said mortgages, with interest and taxes on said land, then amounted to the sum of $2,930; and also the further sum of $1,000 thereof in cash. The plaintiff further says that the sum of $2,470 of said sum of $6,400, the purchase price which defendant agreed to pay plaintiff for said lands, with interest thereon at the rate of seven per cent per annum from the 19th day of February, 1886, is unpaid and now due from the defendant to the plaintiff." Following the above language there was set out in the petition what was termed a "second cause of action." This appears to have been but another statement of the same cause above set out, with some slight variations unimportant to note, since Albright in this court disclaims any reliance on said so-called "second cause of action." In the petition there followed the so-called "second cause of action" this language: "3. That at the instance and request of the defendant, and relying on the defendant's promise to reimburse plaintiff therefor, the plaintiff has incurred expense, costs, and attorney's fees in endeavoring to sustain his title and claim to said stock of goods, wares, and merchandise, amounting to the sum of $337.46, an itemized bill and statement of said expenses, costs, and

attorney's fees being hereto attached, marked Exhibit A, and made a part hereof." On the trial there was introduced no testimony to sustain the above claim for attorney's fees, costs, and expenses, hence this part of the petition will be dismissed from further consideration. Plaintiff alleged that he had sustained damages in the premises in the sum of $3,500, no part of which had been paid, and he prayed judgment in the sum named, with seven per cent interest on $2,470 from February 19, 1886.

In the brief filed on behalf of the defendant in error Albright his counsel summarized the facts constituting plaintiff's cause of action in this language: "Albright sold and conveyed the land before described to Ellison for $6,400, which fact is admitted by all. That Albright received $1,600 and $1,200 (being the mortgage on the quarter in section 28, and one-half of the mortgage on the quarter in section 34, with other lands, with some accrued interest) and the further sum of $1,021 (or $1,023) there is no dispute. Allow us to say the mortgages assumed, with accrued interest, and the cash paid, left only $2,470 of the purchase price of the land, to-wit, $6,400. It was this balance of the purchase money for which suit was commenced." This concise statement of the matters in issue, limiting as it does the inquiry to the item of $2,470, will be accepted as correct, for thereby, without prejudice to the rights of either party, is avoided a tedious recitation of the matters presented by the answer and reply. To an understanding of the matters involved it will be necessary to explain the transactions which gave rise to the alleged indebtedness for the sum last mentioned. For this purpose the evidence on this point of Mr. Albright, summarized, was as follows: On February 19, 1886, Albright sold the southwest quarter of section 28 and the northeast quarter of section 34, town 4, range 1 west, 6th P. M., situate in Thayer county, to Richard Ellison for $6,400. On one of these quarter sections there was a mortgage of $2,400,

with some interest due, one-half of which principal and
interest was assumed by the grantee. On the other quarter
there was a mortgage of $1,600, with some interest due,
the payment of the entire amount of which was assumed
by Ellison. In addition to assuming payment of the above
amounts, Ellison was to pay Albright either $1,021 or
$1,023,—there is some uncertainty as to the exact amount,
—which left to be provided for the $2,470 above referred
to. Albright agreed for this $2,470 to accept a stock of
goods owned by a Mr. Brown. On this stock Ellison held
a chattel mortgage and a bill of sale answering the purposes
of a chattel mortgage. It was agreed between Ellison and
Brown that the amount due on the notes secured by these
two instruments was $1,800. Before negotiations were
consummated, however, the sheriff of Thayer county levied
on the stock of goods and garnished Ellison for the satis-
faction of a claim due from Brown. These proceedings by
the sheriff caused a delay in closing up the trade. It was
finally arranged, however, that the difference between the
$1,800 and the estimated value of the stock of goods,
which was $2,470, should be paid by Ellison to Brown,
less the amount of the two executions, which left $418 going
from Ellison to Brown. Following this adjustment, Al-
bright sent a note by Mr. Brown to Mr. Ellison, wherein
he said for Ellison to settle with Brown according to the
agreement; that the stock had fallen a little short, but that
would be fixed in rent with Mr. Brown. There was a de-
fect in the title to the land which was to be conveyed to
Ellison, and, therefore, when this order was presented to
him, he refused to pay it; subsequently the defect in title
having been obviated, the land was conveyed by Albright
to Ellison, and Albright took possession of the goods.
Ellison indorsed to Albright, without recourse, the notes
of Brown, on which was due the sum of $1,800, together
with the chattel mortgages securing payment of that
amount. These notes and the mortgages were left in a

bank at Alexandria, and Mr. Albright had no knowledge that either had been indorsed to him. After Albright had taken possession of the goods Brown surreptitiously obtained possession thereof, whereupon Albright brought a replevin suit, and thereunder, having obtained possession of the stock, sold it. The replevin action resulted in a verdict and judgment for Brown, and others who were joined with him as defendants, against Albright for the sum of $2,421. The opinion directing an affirmance of this judgment was reported in 23 Nebraska, 136.

· The foregoing statement, as indicated, is compiled from the testimony of Albright, and is given that his version of the affair may appear. It is not to be understood, however, that by this court any attempt has been made to weigh the testimony or settle controverted fact propositions, for no such effort has been made. As was said in the brief for defendant in error, this suit was brought to recover the $2,470 item, to which reference has already frequently been made. It can scarcely escape observation that the defendant in error went into possession of the stock of goods which this $2,470 represented; subsequently such possession was resumed by Brown, and that thereby there was necessitated a suit on the part of Albright to regain his lost possession. Concededly, the only circumstance which could justify Brown's resumption of possession was that Ellison had failed to pay him the balance of $418, or, as Brown figures it, $425, due him from Ellison. Even as to this Brown's testimony was that after his own resumption of possession Ellison tendered this balance to him, which he refused to receive, and refused to deliver up the stock of goods unless he was also paid for the trouble and expense he had been put to. Under these circumstances this action was brought by Albright for the recovery of the $2,470. In his testimony Mr. Albright said that he replevied the stock on the suggestion of Ellison that he should do so, and that he, Ellison, would sign his replevin undertaking to en-

able Albright to replevin. This was denied by Ellison, and
in this connection it is noteworthy that as a matter of fact
.Ellison's name does not appear on the copy of this under-
taking set out in the bill of exceptions. It is difficult to
conjecture how the alleged encouragement of Albright by
Ellison could become important in this case, for the proof
necessary to sustain the plaintiff's allegations was of the
failure of the consideration alleged. The petition was not
framed upon the theory that Ellison was liable upon the
warranty of his title as to the stock of goods transferred
to Albright, but was for a failure of consideration for land
transferred to Ellison by Albright. The possession of
the goods was transferred to Albright in pursuance of the
terms of a contract, under which Ellison became the owner
of Albright's land. This possession was afterwards inter-
rupted by one who at most could justify his interruption
of such possession to the extent in amount of $425. In
the case of *Albright v. Brown*, reported in 23 Neb., 136,
it seems that Albright, as absolute owner, claimed the right
of possession of the entire stock. It admits of grave doubts
whether under these circumstances Ellison could in any
event be held liable for more than the amount he had failed
to pay to Brown; that is, according to the evidence of Al-
bright, $418. (*Vide Aultman v. Stout*, 15 Neb., 586; *Syc-
amore Marsh Harvesting Machine Co. v. Sturm*, 13 Neb.,
210; *Hadley v. Baxendale*, 9 Exch. Rep. [Eng.], 341.)
It appears from the evidence of Albright—though this may
admit of doubt—that Brown predicated his right to resume
possession upon the fact that there remained due him, as
Brown claimed, $425. Under the rule laid down in *Long
v. Clapp*, 15 Neb., 417, a serious question might be made
as to whether or not it was the duty of Albright to have
paid this amount, his recovery against Ellison in that event
being limited to the amount so paid. If this petition had
presented Albright's cause of action as one for damage for
failure of Ellison's title to the stock of goods, it would, to

say the least, have better comported with the proofs offered, and would have afforded an opportunity to try the question of the amount and nature of the damages sustained by the defendant in error.   It is quite evident that the matters in controversy herein can never be satisfactorily determined on the issues heretofore presented on the pleadings.   For our present purpose, however, we shall proceed as though the evidence introduced was strictly relevant to the issues joined.

There was a judgment in the replevin suit, which was afterwards affirmed in this court.   The cause was then remanded to the district court.   The theory of the defendant in error in the trial of this case was, that Ellison was liable for the amount paid by the defendant in error for the satisfaction of the judgment in the replevin action.   For the purpose of showing this payment there was introduced in evidence a page of the judgment docket No. 1 of the district court, on which there appeared the name of Joel T. Albright as judgment debtor, and the names of the parties to the suit, the kind of action, the date of judgment, April 21, 1886, the page of the journal, and the amount of the judgment, $2,421.   The matters described were followed by this writing:

"August 14, 1889.

" Received of Joel T. Albright full satisfaction and payment of this judgment, interest, and costs, and the same is hereby satisfied and discharged in full.

"J. L. Brown,

"Clara A. Brown,

"James Lockwood,

"Defendants,

"By W. O. Hambel,

" Their Attorney."

There was no evidence of the alleged payment other than above given.   Indeed, on May 20, 1889, there was in said replevin action returned an execution *nulla bona.*

In the suit which we have now under consideration there were examined as witnesses the above named J. L. Brown and Clara A. Brown, as well as Joel T. Albright, but by neither of these was there an attempt made to prove the amount paid in satisfaction of the judgment rendered in the replevin action. The plaintiff in the district court relied upon the sufficiency of the above receipt, entered, as it doubtless was, on the original judgment docket. To the introduction of the receipt proper objections were made and exceptions taken. There is, therefore, now presented the competency of this receipt as against Ellison, who was not a party to the action in which the judgment was rendered, of which satisfaction and payment is attempted to be shown by the receipt. In *Davidson v. Berthoud*, 1 A. K. Marsh. [Ky.], 261, the case was for money laid out and expended by the defendants in error to the use of the plaintiff, and for work, labor, etc. The language used in discussing the effect and nature of a receipt was as follows: "The only question material to be decided is, whether the circuit court erred in admitting as evidence a receipt signed by A. Woolford for $222.11, alleged to be advanced by the defendants in error to the plaintiff's use. It is explicitly laid down by Peak in his treatise on Evidence, p. 254, that to prove the payment of money in such a case, the person who made it, or he by whom it was received, should be called as a witness, for the receipt or acknowledgment of a person will be no evidence against the defendant. And, of the correctness of this doctrine, on principle, there can be but little reason to doubt, for proof of the acknowledgment of a person who received the money would only be hearsay evidence, and the receipt of such person is nothing more than written evidence of his acknowledgment, and whether in writing or by parol hearsay evidence is equally inadmissible. (Phillip, Evidence, 174.)" In *Lloyd v. Lynch*, 28 Pa. St., 419, there was under consideration the effect to be given a receipt on a deed as against one not a party to the deed.

Having premised that such receipt was competent evidence against the grantor and all who derived title from him, and was such evidence as to pass the grantor's title, the opinion continued in the following language: "But it is no evidence whatever of the fact of payment against a stranger, or even against one who derived title from Thomas Farrell (the grantor) previously to the date of the conveyance to Lloyd; against them it is nothing but hearsay. It is a mere *ex parte* declaration, not under oath, taken without any opportunity to cross-examine. It has been long settled that such declarations are not evidence against strangers. * * * If such evidence were received against strangers for the purpose of extinguishing their equitable rights, the salutary rules established for ages would be subverted. Hearsay evidence would be substituted for evidence under the sanction of an oath, and all the advantages of a cross-examination would be swept away. Under such a system no equitable title could be protected. But it is urged that there is a presumption that the grantor and grantee have acted with integrity. This may be so, but that is no reason why their declarations should be given in evidence against persons who have no connection with them. If they are acquainted with material facts, they are as much bound to deliver their testimony under oath as other persons, if competent witnesses." Other authorities might be cited to sustain this proposition, but this is hardly necessary, for, on reflection, it is very clear that a receipt signed by Mr. Hambel as attorney could have, as against strangers to it, no greater effect than would his oral utterances made to the same parties. If Albright paid the amount of the judgment, it is no hardship that he be required to so testify, giving thereby an opportunity for an examination as to the media and time of payment, as well as to other material circumstances. Certain it is, there was no competent proof of payment, and without such proof of this essential fact, the

judgment is unsupported in a very important respect. The judgment of the district court is

REVERSED.