STEPHEN SCHULTZ, APPELLANT, V. HASTINGS LODGE NO. 50, INDEPENDENT ORDER OF ODD FELLOWS, ET AL., APPELLEES.

FILED DECEMBER 14, 1911. No. 16,773.

1. **Contracts: CONSTRUCTION: LEASES.** Whether an instrument is an agreement to enter into a contract of lease or is a contract of lease is a question of construction to be ascertained from a consideration of its terms in the light of the surrounding circumstances.

2. ———: ———: CONTRACT FOR A LEASE. An agreement in writing, containing no apt words of present demise, wherein one party agrees to construct a building upon a definitely described parcel of land and to lease the basement and first story of the structure to the other party, and reciting that a lease shall subsequently be executed, and wherein the other party "agrees on his part to enter into a contract of lease for the above described and named building," when considered in connection with the facts stated in the opinion, is construed to be a contract for a lease.

3. ———: ———: INTEREST IN LAND. This contract did not create an interest in the real estate therein described.

4. ———: CONTRACT FOR A LEASE: BREACH: REMEDIES. For a breach of a contract to lease, the expectant tenant may maintain an action for damages, or, in a proper case, for the specific performance of the contract.

5. ———: ———: ABANDONMENT. The mutual rights of the parties to a contract for a lease may be waived and extinguished by oral declarations and other acts of the parties clearly evincing a purpose to abandon the contract.

6. **Specific Performance: CONTRACT FOR A LEASE: ABANDONMENT.** A court of equity will not decree a specific performance of a contract to lease, where the expectant tenant's declarations and conduct were such as to induce the landlord in reason to believe that the contract had been abandoned, and the proprietor, in reliance upon that conduct, leased the premises to another party.

APPEAL from the district court for Adams county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*John C. Stevens,* for appellant.

*J. W. James, Karl D. Beghtol, H. F. Favinger, W. R. Burton* and *Tibbets, Morey & Fuller,* contra.

ROOT, J.

This is an action to compel a specific performance of a contract and for an injunction. The defendants prevailed, and the plaintiff appeals.

In 1909 the plaintiff was, and he still is, engaged in selling at retail automobiles and farm implements at Hastings, Nebraska. The defendant, Hastings Lodge Number 50, I. O. O. F., a corporation organized under the provisions of section 165 *et seq.*, ch. 16, Comp. St. 1909, in 1909 owned four lots in that city. In January, 1909, the defendants Messrs. U. S. Rohrer, J. F. Heiler, C. C. Keith, and J. H. Vastine, members of that corporation, were appointed as a committee to investigate and to report to the lodge whether sufficient funds could be pledged to construct a building upon those lots, and to secure a desirable tenant for that part of the proposed building which the lodge desired to lease. February 4, 1909, the committee, after negotiating with the plaintiff, signed a document upon which he declares in the instant case. It is as follows: "Hastings, Nebr., Feb. 4, 1909. This memorandum of agreement, entered into Feb. 4, 1909, between Hasting Lodge No. 50, I. O. O. F., of Hastings, Nebr., and Stephen Schultz of Hastings, Nebr., witnesseth: That said first party agrees to promptly begin the erection of a brick building 60x106 feet on the corner of Burlington ave. and Second street, Hastings, Nebr., to press same to early completion, and to lease the basement and first floor of said building to said second party, together with the adjacent grounds on the west, for a period of ten years for the agreed rental of $1000 per year, lease to that effect to be executed between the parties before the commencement of work on the building. And Stephen Schultz, the said second party, hereby agrees on his part to enter into a contract of lease for the above described and named building, at the rental of one thousand dollars per year payable monthly in advance, for the term of ten years, from the date of entry into said

building. Each party hereto, binds itself and himself to the strict performance of the conditions of this contract in the penal sum of five hundred dollars, the same to be collectible from the defaulting party hereto. To the performance of these agreements the parties hereto pledge themselves their successors and assigns. In witness whereof we have subscribed the same this 4th day of February, 1909. U. S. Rohrer, C. C. Keith, J. F. Heiler, J H. Vastine, Committee of Hastings Lodge No. 50, I. O. O. F., S. Schultz."

Among other statements, there was indorsed upon the document before it was signed these words: "That elevator shall be installed." It is conceded that this clause became part of the contract, if a contract was made. Subsequently the committee, having failed to secure sufficient encouragement in their attempt to raise funds, reported the fact to the lodge, and submitted the memorandum of contract. Thereupon the lodge abandoned its project, sold the lots to Mr. Rohrer, and subsequently, in accordance with his instructions, conveyed them to the defendant Fraternity Building Association, a corporation organized by Messrs. Rohrer and his associates for the purpose of acquiring the lots and constructing the building thereon. Rohrer agreed to hold the lodge harmless on account of the penalty in the contract, but the evidence does not reveal whether that agreement was in writing. There is no recital in either deed concerning the contract, or that Schultz had or claimed any interest in the property. Rohrer and Heiler are directors of the Fraternity Building Association and largely control its affairs.

The plaintiff, when informed by the contractor some time prior to October 30 (the exact date not being disclosed) that a hand elevator would be installed, stated that, if this were done, he would not occupy the building. During the evening of October 30 one of the plaintiff's sons, in a conversation with Messrs. Rohrer and Heiler, inquired whether a motor or a hand elevator was

to be installed, and upon being informed, sought his father, who went to Rohrer and Heiler, and, during a conversation which degenerated into an altercation, said in substance, according to the testimony of Messrs. Rohrer and Heiler, that he did not have to take the building, but would construct one for himself on a vacant lot across the street, that an attempt was being made to keep him out of the building, and that the contract had been violated. Schultz and his sons, Harry and Walter, testify that nothing was said by their father during the conversation with Heiler and Rohrer about not taking the building, and a Mr. Tooley, who heard part of the conversation, testifies that as Rohrer and Heiler were departing, and while they were about 15 feet from Schultz, the last named person said that they were trying to compel him to give up the building. Preceding this difficulty, Mr. Rohrer delivered the contract to his counsel, the late Judge Batty, with instructions to draft a contract of lease. Judge Batty prepared duplicate drafts of a contract and delivered them with the memorandum contract with the lodge to Mr. Schultz about October 15. Monday, November 2, Mr. Schultz, without comment, returned the contract and the copies to Judge Batty.

November 5, 1909, the building association and the defendant Stitt-Dillon Company, one of the plaintiff's competitors in business, executed a written contract of lease for the building at a rental greater by $200 a year than provided for in the contract with the lodge. The Stitt-Dillon contract was recorded the day it was executed. At this time the floor of the first story was not completed and some of the interior finishing was incomplete. The defendant Stitt-Dillon Company knew that negotiations had been pending between its lessor and Mr. Schultz for that part of the building described in the contract of lease, but were told by Mr. Rohrer that they had been discontinued. The Stitt-Dillon Company immediately posted a statement, to the effect that it would oc-

cupy the premises about December 1, in a conspicuous place on the exterior of one of the outer walls. Subsequently, having been informed that the plaintiff contemplated interfering with this defendant, it, with the contractor's consent, placed an automobile in the building after a temporary injunction had been granted, but before its service, and, as the district court found on a hearing for an alleged contempt, prior to the time that defendant knew that the order had been issued.

November 6, one of the plaintiff's sons having noticed the Stitt-Dillon sign on the building, and having informed the plaintiff of the fact, the plaintiff called on Judge Batty for an inspection of the drafts of the contract of lease, and for the first time stated that they were objected to because they contained provisions not in accord with the agreement to lease, and very soon thereafter a demand was made on the defendant Fraternity Building Association that it execute to the plaintiff a contract of lease according to the terms of the contract between the plaintiff and the lodge.

The defendants Rohrer, Keith, Heiler, and Vastine filed a general demurrer to the petition, which, so far as we are advised, has not been ruled on.

The defendant lodge answered separately, disclaiming any interest in the controversy, and alleging, among other things, that the contract was invalid because not executed according to law. Counsel for the plaintiff, during the argument at the bar, stated that his client did not contend for a judgment against the lodge, and we shall give it no further consideration.

The defendant Fraternity Building Association, among things, contends in its answer that, although it did not assume any of the obligations created by the transaction between the plaintiff and the lodge, it expected and was willing to lease the basement and first story of the building to the plaintiff, and deposited the contract with its counsel to draft a contract of lease for that purpose, but, having been informed by the plaintiff

that he would not enter into a contract unless a motor elevator was installed in the building, and the plaintiff having returned the drafts prepared by Judge Batty, it understood that all negotiations with the plaintiff were at an end, and, relying upon his declarations, entered into the contract with the Stitt-Dillon Company, and thereby became incapacitated to execute the contract demanded by the plaintiff.

The defendant Stitt-Dillon Company, among other defenses, contends that it is an innocent purchaser, that the contract between the plaintiff and the lodge did not run with the land, and that its lessor was not bound thereby. The plaintiff in his reply, while denying that he surrendered his rights under the contract, contends that whatever was said with respect thereto is void under the statute of frauds because not reduced to writing and signed by him. The district court found generally in the defendants' favor, and by reference incorporated a memorandum opinion into the decree. The gist of this opinion is that the contract between the lodge and the plaintiff is an agreement for a lease and did not run with the land; that, if it be conceded that the building association assumed the obligations of this contract, the plaintiff waived any right he may have had to a contract of lease. Specific performance therefore was not granted.

The plaintiff is not entirely consistent in asserting that the contract should be construed to be a lease, and in contending that he should have specific performance of the same contract as an agreement to execute a lease. Whether an instrument is a contract of lease or an agreement to execute a contract of lease depends upon the parties' intentions, which will be gathered from all the terms of the instrument considered in the light of the surrounding circumstances. 1 Underhill, Landlord and Tenant, sec. 179; Jones, Landlord and Tenant, sec. 141; *Griffin v. Knisely*, 75 Ill. 411; *Martin v. Davis*, 96 Ia. 718. There are no apt words in the agreement considered in this case to create a present or future demise; both parties clearly

contemplated the subsequent execution of a contract in writing, and the conduct of all of the parties in interest clearly indicates that they intended the contract as one for a subsequent lease. We shall therefore consider the case on that theory.

In this view of the case, the plaintiff acquired no interest in the real estate. 1 Taylor, Landlord and Tenant (9th ed.) sec. 37. The contract, however, if valid, may be enforced by an appropriate action against those liable for its breach. One of the actions recognized by the law is for a specific performance. Assuming, but not deciding, that the defendant Fraternity Building Association adopted the contract, we think the plaintiff's conduct was such that the district court was justified in denying specific performance. The part of the building in controversy had been planned and was built for the use of a retail dealer in implements, automobiles, or other like chattels, and could not without a considerable additional outlay be prepared for a tenant engaged in ordinary mercantile business. Ordinarily tenants for that class of property are not so easily secured as for a building property constructed and finished for the retail trade.

The plaintiff's condition of mind is shown by his statement to the contractor before the altercation of October 30 that, unless a power elevator was installed, he would not take the building, and corroborates the testimony of Rohrer and Heiler that Schultz said he did not have to take their building, and would not do so, but proposed to construct one for himself. The evidence discloses that the plaintiff is a wealthy, aggressive, successful business man, and Messrs. Rohrer and Heiler might in reason believe that Schultz intended to abandon whatever rights he had in the premises. The return of the contract and the drafts of the lease to the defendant's counsel would lead the average man with knowledge of the transaction to conclude that Schultz did not intend to take the building. Possibly this conduct was intended as weighty argument in favor of the building association yielding to

Schultz' demands, and possibly Schultz had no other purpose, but he took the chance that his declarations would be seriously considered by the officers of the building association and accepted as a correct statement of his intentions.

"A party, seeking a specific performance, must not only come to enforce a fair and reasonable contract, but must show that his own conduct in reference to the contract has been fair and candid." *Garrett v. Besborough*, 2 Dru. & Wal. (Irish Ch.) 452, 459. *Mahon v. Leech*, 11 N. Dak. 181.

If the contract was one for the purchase and sale of real estate, a court of equity might accept the plaintiff's conduct as an abandonment of his rights in the premises. *Sieker v. Sieker*, 89 Neb. 123.

We conclude, from a consideration of the entire record, that the judgment of the district court is right, and it is

AFFIRMED.

FAWCETT and SEDGWICK, JJ., dissent.