# A. ENKEMA v. JAMES R. McINTYRE AND OTHERS.[1]

## March 9, 1917.

## Nos. 20,131—(232).

**Facts.**

1. Plaintiff, a vendee in an executory contract for the sale of land, refused to make payments as they matured, stating that he was informed that the title was doubtful. The vendor made a void attempt to cancel the contract by notice, and sold the land to another, and this one in turn sold to still another. Thereafter, and nearly a year after his refusal to pay, plaintiff vendee brings action against all the parties mentioned for specific performance.

**Specific performance denied after refusal to perform.**

2. The court will not enforce specifically every written contract for sale of land. Delay until others have in good faith acquired rights in the land is usually a bar. Specific performance will not be decreed in favor of one who has himself once refused to perform.

**Notice to purchaser.**

3. The last purchaser in this case had notice of plaintiff's contract but his purchase was an honest transaction, induced or made possible by plaintiff's conduct, and his equities are superior to those of plaintiff.

**Consideration — assumption of mortgage.**

4. The recital of consideration in his deed is no evidence that he paid any money, but he assumed a substantial mortgage to a third party. This constitutes a valuable consideration.

**Abandonment by vendee unaffected by statute.**

5. The statute forbidding a vendor to terminate a land contract without giving a prescribed notice, does not prevent the vendee's abandonment of the contract.

Action in the district court for Mahnomen county to determine the amount due under a certain contract for the sale of land, and that, upon paying such amount to the person entitled thereto, the owner be required to convey to plaintiff. The case was tried before Grindeland, J., who

[1]Reported in 161 N. W. 587.

136 M.—20

made findings and ordered judgment in favor of plaintiff. Defendants' motion for amended findings was denied. Plaintiff's motion for additional findings was granted. From an order denying their motion for a new trial, defendants appealed. Reversed.

*Edgerton & Dohs,* for appellants.

*McDowell & Fosseen,* for respondents.

HALLAM, J.

. 1. This is an action to enforce specific performance of a contract to convey 240 acres of land, brought by plaintiff, a vendee against defendant McIntyre, the vendor, defendant Jester, a subsequent purchaser from the vendor, and defendant Van Dalen, a purchaser from Jester. The court found for plaintiff and ordered judgment for specific performance. The defendants appeal.

The contract between McIntyre and plaintiff was made October 15, 1913. The price was $6,960. $200 was paid down; $800 was to be paid December 1, 1913; $1,230 December 1, 1914; $1,230 December 1, 1915; $3,500 November 15, 1919, in accordance with the terms of a mortgage on the land which was to be extended to that date. All deferred payments were to bear interest and plaintiff was to pay taxes subsequently levied or assessed. Time was of the essence; until default, plaintiff was to have possession of the premises. The land was unoccupied except that about 20 acres had been broken. Plaintiff never took personal possession. On November 13, 1913, a partner of plaintiff rented the 80 on which there had been some cultivation to one Swenby who cultivated this portion in 1914. He did not live on it. He came and planted and harvested the crop and left. In June, 1914, a banker in a nearby town leased the remaining land to one Erickson who in July cut 16 tons of hay and stacked it on the land.

When the payment due December 1, 1913, matured, plaintiff did not pay. The reason why he did not pay at that time does not appear. On December 5, 1913, a decision of this court was filed which plaintiff thought threw doubt on the title to part of the land which was "Indian land." "At the time of this decision" plaintiff turned the abstracts over to Mr. Powell, an attorney, an authority on Indian titles, and some six weeks later advised defendant Callahan, McIntyre's attorney, that Mr.

Powell had expressed doubt as to the title and he declined to proceed until he received a further report from Mr. Powell which he would receive in "probably * * * a week or ten days." Further correspondence passed. On March 10, plaintiff (wrote again declining to proceed until he could "hear further from Mr. Powell," and indicating that Mr. Powell would give a "full opinion on the subject" between then and April 10. Plaintiff closed this letter with the statement: "Until we hear further from Mr. Powell, we do not deem it good business on our part to make further payments on any of these lands." Again on March 12 plaintiff wrote, stating that Mr. Powell would be back not later than "Saturday next" and would then "be in position to look this matter up." In answer to this Callahan wrote, charging that the trouble was "financial rather than legal." On March 19, plaintiff answered denying this, protesting his financial ability, and again stating "we certainly would not consider it prudent to make further payments on this tract of land in face of the advice received from Mr. Powell." With this he dropped the correspondence.

McIntyre and his attorney, though protesting all the time, did wait until several weeks beyond the time asked by plaintiff, but plaintiff did nothing. On April 29 they caused to be served on plaintiff a notice under G. S. 1913, § 8081, calculated to terminate the contract in 30 days after such service. Still plaintiff did nothing. The notice of termination was ineffective because the registration tax was not paid (First State Bank of Boyd v. Hayden, 121 Minn. 45, 140 N. W. 132), but probably neither party knew the effect of this failure at that time. On June 27, 1914, the contract was recorded and the registration tax paid and on July 24, 1914, the notice and return of service thereof were filed. Plaintiff testified that he was advised by his attorney in the fall of 1914 that, by reason of a later decision in the case above referred to, this title was good. Still he did nothing. December 1, 1914, came and plaintiff evinced no disposition to make the payment due on that day. He paid no taxes as the contract required. The first symptom of a purpose to carry out his part of the contract was the commencement of this suit on February 25, 1915.

In the meantime, defendant McIntyre, supposing that the contract

had been regularly canceled, conveyed the land by warranty deed on September 15, 1914, to defendant Jester, and Jester gave a mortgage of $6,720 to defendant Callahan. On October 22, 1914, Jester conveyed the land by warranty deed to defendant Van Dalen. By the terms of this deed Van Dalen assumed and agreed to pay the Callahan mortgage. The $3,500 incumbrance was paid and satisfied of record. The taxes were paid. Before Jester made his purchase he submitted an abstract of title to an attorney and the atttorney advised him with reference to the title. He was not permitted to testify what that advice was, but he bought. Before Van Dalen purchased he submitted the abstract to another attorney. This attorney advised Van Dalen that the title was good.

The question of law is whether on this state of facts the court properly decreed specific performance.

2. If competent parties enter into a written contract for the conveyance of land and one party refuses to perform, the other may, as a rule, enforce specific performance of the contract. If nothing more than that appears, specific performance is as much a matter of course as damages. Abbott v. Moldestad, 74 Minn. 293, 77 N. W. 227, 73 Am. St. 348. But the court will not enforce specific performance of every written contract to convey land. If the contract is unconscionable or circumstances have arisen which render specific performance inequitable, relief will be denied. Buckley v. Patterson, 39 Minn. 250, 39 N. W. 490. "The situation involved should be considered from a practical, rather than a theoretical, view point." First Nat. Bank v. Corporation Securities Co. 128 Minn. 341, 348, 150 N. W. 1084. Laches or delay on the part of the party asking performance, until others have in good faith acquired rights in the property, are usually a bar. Thompson v. Winter, 42 Minn. 121, 43 N. W. 796, 6 L.R.A. 236; Thaxter v. Sprague, 159 Mass. 397, 34 N. E. 541; Schultz v. Hastings Lodge No. 50, I. O. O. F. 90 Neb. 454, 133 N. W. 846; Chilhowie Iron Co. v. Gardiner, 79 Va. 305; Lasher v. Loeffler, 190 Ill. 150, 60 N. E. 85; Giltner v. Rayl, 93 Iowa, 16, 61 N. W. 225; 4 Pomeroy, Equity, p. 2777, § 1408. Nor will specific performance be decreed in favor of one who has himself once refused to perform. Schultz v. Hastings Lodge No. 50, I. O. O. F. supra; Thaxter v. Sprague, supra; Chilhowie Iron Co. v. Gardiner,

supra; Lasher v. Loeffler, supra; Giltner v. Rayl, supra.

3. If we apply these principles, specific performance must be denied. When performance was due from plaintiff he refused to perform. He was not satisfied with his vendor's title. It was clear his vendor could do nothing to better his title. He waited until another who was willing to take the title accepted it and took a conveyance, and then, nearly a year after he had not merely neglected but refused to pay, he comes into court without so much as a prior intimation that he had changed his mind as to the title, and asks a restoration to all his former rights.

Defendant Van Dalen was charged with notice of plaintiff's contract. The contract was on record. He was not therefore a purchaser without notice. What rights he has are not by virtue of the recording acts. But this fact is not determinative of his rights. That he had notice of plaintiff's rights bars him of nothing if plaintiff had given it out that he abandoned those rights. This may not be a case of technical estoppel. It is rather a question of superiority of equities. If Van Dalen's purchase was an honest transaction and was induced or made possible by the conduct of plaintiff, his equities are superior. See McDermid v. McGregor, 21 Minn. 111; Simpson v. Atkinson, 39 Minn. 238, 39 N. W. 323; Oliver Mining Co. v. Clark, 65 Minn. 277, 68 N. W. 23. The evidence is undisputed that Van Dalen acted with honesty of purpose. He took legal advice before he bought and was advised that the title he acquired was good. Had he inquired further he would have found that the last word from plaintiff was a refusal to pay though payment was overdue.

4. True, there is no evidence that Van Dalen paid any money to Jester. The acknowledgment of receipt of consideration in the deed is not evidence of this as against plaintiff. Ferris v. Boxell, 34 Minn. 262, 25 N. W. 592; Heartz v. Klinkhammer, 39 Minn. 488, 490, 49 N. W. 826; Cain v. Mead, 66 Minn. 195, 68 N. W. 840; United States v. Brannan, 217 Fed. 849, 133 C. C. A. 559; 2 Wigmore, Evidence, p. 1821, § 1456; Ellison v. Albright, 41 Neb. 93, 59 N. W. 703, 29 L.R.A. 737, but he did assume a mortgage of $6,720 to one other than his vendor, and, after he purchased, the mortgages standing on the land were satisfied, and the taxes were paid. His assumption of this mortgage constituted him a purchaser for a valuable consideration. 39 Cyc. 1699;

Drey v. Doyle, 99 Mo. 459, 12 S. W. 287; Citizens Bank v. Shaw, 14 S. D. 197, 84 N. W. 779. Even if it can be said that he can be placed in *statu quo,* still we think that inasmuch as he has completed his purchase, paid out money, and assumed obligations, his equities are greater than those of plaintiff, and that the court should not now aid plaintiff in divesting him of his title or rights. McDermid v. McGregor, 21 Minn. 111; Oliver Mining Co. v. Clark, 65 Minn. 277, 68 N. W. 23. Perhaps McIntyre could have resisted specific performance had no conveyance been made. Simpson v. Atkinson, 39 Minn. 238, 39 N. W. 323.

5. The statute, G. S. 1913, § 8081, did not permit plaintiff's vendor to terminate plaintiff's contract without his consent, except on a good notice given in accordance with the statute, but the statute did not stand in the way of plaintiff's abandonment of his contract. Mathwig v. Ostrand, 132 Minn. 346, 347, 157 N. W. 589. The statute was designed to protect those who would pay but cannot, not to protect those who can pay but will not. We do not hold that plaintiff's conduct was such an abandonment as constituted a rescission of the contract so as to terminate his right to damages if the title offered was bad. In fact if he has any right to damages he may assert it in this action. Thompson v. Myrick, 24 Minn. 4; Murray v. Nickerson, 90 Minn. 197, 95 N. W. 898; Baumgartner v. Corliss, 115 Minn. 11, 131 N. W. 638. We do hold that his conduct was such as to render it inequitable that he should be permitted to assert his right to specific performance after another has, acting honestly, assumed obligations and acquired rights in the land.

Order reversed.