SLATKIN *v.* SCHUMER.

1. VENDOR AND PURCHASER—LAND CONTRACTS—NOTICE—BONA FIDE PURCHASER.

Where the vendees in a land contract are in possession of the premises, one who buys from the vendor without inquiry cannot be said to be a *bona fide* purchaser.

2. CONTRACTS—ENFORCING CONTRACT AS MADE.

Courts can only require the performance of contracts the parties have made themselves, and cannot make contracts for them.

3. SPECIFIC PERFORMANCE—LAND CONTRACTS TO BE ENFORCED MUST BE CERTAIN AND DEFINITE.

In order to warrant specific performance of a land contract, it must be certain and definite, so that the full intention of the parties may be ascertained to a reasonable degree of certainty.

4. SAME—NOT A REMEDY OF RIGHT.

Specific performance is not a remedy of right, but one resting in the sound discretion of the court.

5. SAME—LAND CONTRACT—INCAPABLE OF ENFORCEMENT—EQUITIES —DISMISSAL.

In a suit for the specific performance of a land contract, which was imperfect in its terms, containing contradictory clauses, and although time was of the essence of the contract the time within which it should have been performed had expired, subsequent to which other parties acquired interests in the property conveyed whose equities were superior to plaintiff's, the court below properly dismissed the bill.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 9, 1920. (Docket No. 31.) Decided June 7, 1920.

Bill by Charles Slatkin and another against William F. Schumer and others for the specific performance

of a land contract. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Samuel W. Shier* (*Guy W. Moore*, of counsel), for plaintiffs.

*Howard H. Campbell* (*Joseph H. Primeau, Jr.*, of counsel), for defendants.

STONE, J. This case is here upon appeal by the plaintiffs, from a decree of the circuit court of Wayne county, in chancery, dismissing the bill of complaint. The bill was filed by the purchasers, Charles Slatkin and Ruth, his wife, against the vendors, William F. Schumer and Emma, his wife, praying for a decree for the specific performance of a so-called land contract bearing date January 2, 1919, and hereinafter set forth. The defendants Leo J. Hopcroft and Henrietta M., his wife, are the subsequent purchasers from the defendants Schumer, of the premises here involved, and other adjoining premises—the property here involved being a part of a larger property upon which there were existing at the time of the hearing three mortgages, to wit: a first mortgage bearing date June 13, 1914, for $5,200; a second mortgage dated April 21, 1916, for $2,800, both given to the Detroit Savings Bank; and a third mortgage to certain parties of Tiffin, Ohio, called the "Tiffin mortgage," bearing date January 18, 1918, upon which there was unpaid the sum of $5,500, at the time of the hearing below.

On or about January 2, 1919, plaintiff Charles Slatkin and defendant William F. Schumer met at the office of Mr. Primeau, an attorney, and discussed the terms of an agreement to be entered into for the purchase by Slatkin of the premises here involved. The interview resulted in the contract following, which was signed in duplicate on January 4, 1919. That contract was as follows, viz.:

"This agreement, made and entered into this second day of January, A. D. 1919, by and between William F. Schumer and Emma Schumer, his wife, of the city of Detroit, county of Wayne, State of Michigan, parties of the first part, and Charles Slatkin, and Ruth Slatkin, his wife, also of said city of Detroit, parties of the second part.

"Witnesseth as follows:

"Whereas, the said parties of the first part are the owners of the land hereinafter set forth, and are desirous of selling the same to said second parties, and said second parties are willing to purchase the same subject to the conditions hereinafter set forth;

"Now, therefore, in consideration of the sum of one dollar and other good, valuable considerations, paid by said second parties to said first parties, receipt whereof is hereby confessed, the said parties of the first part hereby agree to sell to said second parties the following described land, situated in the city of Detroit, county of Wayne, State of Michigan:

"A piece or parcel of land approximately twenty feet frontage on Jefferson avenue, by forty-seven feet in depth, so as to cover the premises now occupied by Charles Slatkin, as his jewelry store, and covering the porch in rear thereof, being a part of lot one (1), of J. L. Miner's subdivision of the westerly 212.54 ft. of outlot No. 1, subdivision of the St. Jean Farm, being the westerly part of private claim 26, between Jefferson avenue and Edlie avenue, Fairview (now Detroit), Wayne county, Michigan, according to the recorded plat thereof in the office of the register of deeds, in liber 25 of plats, on page 25—for the sum of seven thousand dollars ($7,000), which the parties of the second part hereby agree to pay to said parties of the first part as follows:

"The sum of five hundred dollars, upon said first parties being able to have mortgages reduced against said above described premises to the sum of thirty-five hundred dollars, which mortgage said second parties will assume and agree to pay.

"Also upon examination of abstract to said parcel of land showing a good merchantable title to said land in said parties of the first part to the satisfaction of said second parties, free and clear of all incumbrances excepting mortgage of $3,500 above mentioned.

"2. The sum of three thousand dollars cash upon delivery to said second parties of a warranty deed to said premises given by said first parties, free and clear of all liens and incumbrances, subject to a mortgage of $3,500.

"3. The assumption by said second parties upon acceptance of said deed of the payment of said mortgage of $3,500, according to the tenor thereof.

"It is hereby mutually understood between the parties hereto that said first parties shall furnish an abstract of title to said second parties, showing a good merchantable title to said premises, free and clear of all incumbrances, excepting mortgage above referred to of $3,500 within fifteen days from the date hereof, and that said second parties shall cause said abstract to be examined within five days from receipt of said abstract, so that the entire matter can be settled and deed herein covenanted for and be delivered on or before February 1, 1919.

"It is understood and agreed between the parties that if the mortgage now held by the Detroit Savings Bank is not reduced to thirty-five hundred dollars, said second parties agree to give a second mortgage up to five hundred dollars, payable four years from date of deed, so that first parties can apply cash consideration of this deal to the payment of said Detroit Savings Bank mortgage to not more than three thousand dollars.

"It is understood that after the title is found satisfactory and that there are unpaid claims against said property, said second parties are willing to pay said claims out of the consideration hereof upon order of said first parties, and the amount so paid, if any, will be deducted from the three thousand dollars to be paid said first parties and credited upon said payment.

"It is understood that the deed above covenanted for shall contain a clause for an easement giving said second parties, their heirs and assigns the perpetual use of the passageway of three feet wide on the west side of said lot one so that they shall have the right of egress, regress and ingress from land hereinbefore described to the alley in the rear thereof. This right to be in common with the owners and their tenants of the adjoining premises on the east and south side of said land.

"It is understood that said first parties shall have the right of an easement in the premises herein covenanted to be sold for the use of the water connection in order to furnish water to their tenants of premises known as 2460 and 2460½ Jefferson avenue, and that for such right said first parties shall pay three-fourths of the water rates charged against said premises up to March 1, 1919, and by that time said first parties must install meters in the premises adjoining thereto. This privilege of using this water connection shall continue until said first parties shall connect his own premises with water, and said connections must be made within one year from date of deed. In case meters are not installed by March 1, 1919, said second parties shall have right to discontinue use of water to said adjoining premises until other arrangements are made.

"It is mutually understood by and between the parties hereto, that in case of default in any of the terms and conditions herein stated by said second parties, the said first parties shall have the right to declare this contract forfeited and said second parties shall pay to said first parties the sum of five hundred dollars as stipulated damages for the nonperformance of this contract.

"It is mutually understood that if said first parties are unable to have the Detroit Savings Bank reduce their mortgage against said premises to the sum of thirty-five hundred dollars by February 1, 1919, then these presents are to be null and void and of no effect and each of the parties hereto will be released from obligations of this contract.

"In witness whereof, the parties hereto have hereunto set their hands and seals in duplicate, the date and year first above written.

"WILLIAM F. SCHUMER  (Seal)<br>
"EMMA SCHUMER  (Seal)<br>
"CHAS. SLATKIN  (Seal)<br>
"RUTH SLATKIN  (Seal)

"Signed, sealed and delivered in presence of:
> "SAM FREEDMAN,
> "J. B. HIPPLER.

"Detroit, Mich., January 4, 1919."

The Tiffin mortgage was not mentioned in the plead-

ings, but was introduced in evidence, over the objection of the plaintiffs, to show the state and condition of the title. A careful reading of the foregoing instrument will show that it is a most remarkable document. It contains numerous repugnant and dissimilar provisions, and in the light of the testimony of the parties it may well be doubted whether the minds of the parties thereto ever met, if that expression is applicable to a written contract. To add to the confusion, is the fact that the parties in their testimony do not agree on a single material fact as to what was done or took place between them subsequent to the signing of the instrument.

It will be noted that the so-called contract, after stating that the entire purchase price was $7,000, provided for the payment of $500 upon the first parties being able to have the mortgages reduced against the premises described to the sum of $3,500, which sum was to be assumed by the plaintiffs. Also upon examination of abstract, which was to show a good merchantable title to the land in the first parties to the satisfaction of the second parties, to be free and clear of all incumbrances, except the mortgage of $3,500 to be assumed. The testimony tends to show that the Tiffin mortgage was here wholly ignored, and there was no arrangement made with the holders of that mortgage to divide or reduce the same, or release these premises. Another provision of the contract, which can only be explained by having in mind the Tiffin mortgage is the following:

"It is understood that after title is found satisfactory and that there are unpaid claims against said property, said second parties are willing to pay said claims out of the consideration hereof upon order of said first parties, and the amount so paid, if any, will be deducted from the $3,000 to be paid said first parties and credited upon said payment."

What this provision means it is very difficult to determine. The Tiffin mortgage of $5,500 certainly could not be paid with $3,000, and from the testimony the minds of the parties had not met upon that subject. About the only thing that is undisputed is the testimony of the officer of the Detroit Savings Bank, who testified that that bank refused to divide these mortgages, or to release all but $3,500 against these premises except upon the payment of $1,000. The payment of $1,000, or any other sum, was evidently not contemplated by the parties when the contract was made. The defendant Schumer testified that it was impossible for him to raise that sum; that he was "hard pressed," and found it impossible to get any money at the banks, or elsewhere, and was even inducing the plaintiff Slatkin, who was a tenant occupying these premises under a lease, to pay him rent in advance. This property, together with the adjoining property, was subsequently sold to defendant Hopcroft for $21,-500. There were mortgages outstanding against the entire property at the time, according to this record, of $13,500. It is not strange that defendant Schumer found it difficult to borrow any more money upon the property. The contract contains this clause:

"It is mutually understood that if said parties are unable to have the Detroit Savings Bank reduce their mortgage against said premises to the sum of $3,500 by February 1, 1919, then these presents are to be null and void and of no effect, and each of the parties hereto will be released from obligations of this contract."

Standing over against this provision is the following:

"It is understood and agreed between the parties that if the mortgage now held by the Detroit Savings Bank is not reduced to $3,500, said second parties agree to give a second mortgage up to $500, payable four years from date of deed, so that first parties can

apply cash consideration of this deal to the payment of said Detroit Savings Bank mortgage to not more than $3,000."

How this provision can be reconciled with the other one just quoted, it is difficult to understand. They are repugnant and contradictory. The plaintiffs claim that this is a proper case for the specific performance of this agreement, so-called, and lay much stress upon the fact that defendants Schumer have never served any notice of forfeiture upon the plaintiffs.

It is the claim of defendants Schumer that by the terms of the contract the reduction of the incumbrance upon the property in question to $3,500 by the Detroit Savings Bank was in the nature of a condition precedent to the performance of the contract; that the plaintiff Charles Slatkin was notified a number of times during the month of January that this division and arrangement could not be made, and that by his language and conduct he acquiesced in the claim of defendant Schumer that the contract was therefore at an end, Slatkin saying: "Well, you can't if you can't, that is all."

It seems that a certain note of $100 had been given by the defendant William F. Schumer to the plaintiff Charles Slatkin, and at the time of the signing of the so-called contract it was agreed that Slatkin should take care of the note, which had been indorsed by him and discounted, and that the same should apply as a payment upon the contract. It is the further claim of defendant Schumer that, during the month of January, Slatkin went to him and requested him to pay this note, thereby indicating that he treated the negotiation as ended, and sought to put matters in their original position. That position was one of landlord and tenant. The plaintiff was in possession of the premises here involved under a lease from defendants Schumer, which lease is still running so far as time

is concerned, has never been surrendered, nor has possession of the premises under the lease been surrendered. Whether a tender was made or attempted, as claimed by Slatkin, was a disputed question at the hearing.

The premises, together with the adjoining property, were sold and conveyed to the defendant Hopcroft and his wife by the other defendants on the 11th day of February, 1919, and within a day or two thereafter defendant Hopcroft caused to be served upon plaintiff Charles Slatkin a notice that he had purchased the premises, and that Slatkin should pay him all future rents accruing under the lease. According to Hopcroft's testimony, plaintiff Slatkin came to him after his purchase and requested certain repairs to be made to the closet on the premises, and Hopcroft paid the plumber for the work. Nearly all of these matters were disputed by the opposite parties. The record abounds in testimony that is contradicted, but the learned circuit judge, who heard the case, disposed of it in a very short opinion, in which, among other things. he said:

"Before adjudicating the rights of the parties, it is well to keep in view that the relief prayed for will not be granted unless the clear weight of the evidence, considering the principles involved, should move the court to grant the plaintiffs the remedy they seek. As has been stated, it is not a matter of right, but one of grace.

"Other rights have intervened, and while I do not believe that the subsequent purchaser stands well in the shoes of an innocent purchaser, the matter of his position must be kept in mind in passing on the evidence. It is the aim of the court to do justice to all the parties, and relief will not be granted where more harm would befall the defendants in the light of the circumstances than could perchance benefit the plaintiffs. The affirmative rests with the plaintiffs and from an appraisal of the testimony in this case, I do not feel that this burden has been sustained.

"The parties here were neighbors and as landlord and tenant were in close touch with one another. I do not believe that they misapprehended their rights under their written agreement. The abstract was to be delivered within fifteen days after the date of execution. Its non-delivery placed the plaintiffs at least upon inquiry. While they were not bound to act upon this circumstance, their actions subsequent thereto necessarily are not without some importance. The plaintiffs' actions and conduct subsequent to the acquisition of rights in the premises by Hopcroft, with said Hopcroft as well as with defendants Schumer, might well have indicated a different intention on their part. I am of the opinion that the plaintiffs could have saved the situation of Hopcroft by asserting their claims otherwise than the testimony indicates. The proofs do not satisfy the court in this regard, and I am led rather to believe that the plaintiffs through their conduct have made their own situation possible and that the defendants, in reliance upon plaintiffs' actions, cannot now be held to a specific performance of the contract. Hopcroft did not purchase until after the date mentioned in the agreement for its termination.

"Their difficulties in reference to the mortgage, its reduction, the consequent negotiation with regard to the note later, and other facts and circumstances, do not satisfy the court of the continuing intent of the plaintiffs to enforce the agreement, and to stand upon their rights thereunder.

"I am of the opinion that the plaintiffs are without relief in equity to enforce this contract, and conclude that the bill must, therefore, be dismissed, with costs to the defendants."

Without reviewing the testimony in the case, all of which we have read, we are constrained to agree with the circuit judge in the value which was placed upon such testimony by him, and in the conclusion which he reached.

It cannot be said that the defendant Hopcroft was a *bona fide* purchaser, in the light of the fact that the plaintiffs were in possession of this property, and we think it was the duty of Hopcroft to have inquired

into the nature and extent of such possession; but we do think his equities in the case are superior to those of the plaintiffs. Hopcroft paid for the property, and has expended money thereon in good faith.

As was said by the supreme court of Minnesota in a case somewhat similar (see *Enkema* v. *McIntyre,* 136 Minn. 293 [161 N. W. 587, and note to 2 A. L. R. 411]):

"It is rather a question of superiority of equities. If Van Dalen's purchase was an honest transaction, and was induced or made possible by the conduct of the plaintiff his equities are superior. * * * Even if it can be said that he can be placed *in statu quo,* still we think that, inasmuch as he has completed his purchase, paid out money, and assumed obligations, his equities are greater than those of plaintiff, and that the court should not now aid in divesting him of his title or rights."

In answer to the contention that a notice of forfeiture should have been served to properly terminate the contract, that court held that the statute forbidding a vendor to terminate a land contract without giving prescribed notice, did not prevent the vendee's abandonment of the contract.

It should be borne in mind that this is not a bill to reform a contract. Courts can only require the performance of contracts the parties have made themselves, and cannot make contracts for them. A contract to be valid must be certain and definite in order to warrant a specific performance, and conflicting terms or clauses of a contract which cannot be reconciled cannot be ignored by the court in considering the question of specific performance. It is said to be an elementary rule that in order that a contract may be enforceable the promise or agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty. 6 R. C. L., title "Contracts," § 59,

p. 644. Contracts are to be construed with reference to all of their terms.

In 13 Corpus Juris, p. 536, the rule is stated as follows:

"Where two clauses are so repugnant that they cannot stand together, the first will be retained and the second rejected, unless the inconsistency is so great as to avoid the instrument for uncertainty, and this rule is the more readily applied where the instrument is apparently carelessly drawn, or where the conflicting clause is on the back of the contract. But where the language admits of but one meaning and the different clauses are plainly contradictory, they mutually destroy each other, and render the instrument void. In any event a subsequent clause may be rejected as repugnant only where it cannot be given effect by any fair or reasonable interpretation of the entire contract, the rejection of a repugnant clause being an expedient which the court will have recourse to very reluctantly." See the numerous cases cited.

In *Union Pub. House* v. *Tumbleson* (Iowa), 134 N. W. 552, the court said:

"The claim is that as matter of law the first stipulation on the subject found in the contract was conclusive, and any further stipulation in modification thereof should be disregarded. This is not the law. All the terms of the contract are to be construed together if possible, and a subsequent provision modifying, limiting, or otherwise in part contradictory to a prior stipulation may be given effect."

If any effect is to be given to the last clause of the contract, which clause we have quoted, then time was of the essence of this contract; and it should be held that it terminated on February 1, 1919. In our opinion the contract here in question is too imperfect in its terms to warrant the court to decree a specific performance. Specific performance is not a remedy of right, but one resting in the sound discretion of the court. This doctrine has been so frequently an-

nounced by this court that it would seem to be unnecessary to refer to cases. The rule is well expressed in *Oakman* v. *Esper*, 206 Mich. 315. It would be very difficult to frame a decree for specific performance in this case.

In our opinion the court below reached the correct conclusion in this case, and its decree will be affirmed, with costs to the defendants.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.