## STATE v. FAIRVIEW HOSPITAL ASSOCIATION.

114 N. W. (2d) 568.

March 16, 1962—No. 38,474.

*Carl F. Grandrud, Arthur C. Wangaard, Cant, Haverstock, Beardsley, Gray & Plant, Kenneth M. Anderson,* and *Lawrence E. Nerheim,* for appellant.

*George M. Scott,* County Attorney, and *Edward J. Shannon,* Assistant County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Defendant, Fairview Hospital Association, a nonprofit or charitable hospital organized under Minn. Const. art. 9, § 1, and Minn. St. 272.02, appeals from an order of the district court denying its alternative motion for amended findings or a new trial in proceedings wherein it was determined that certain real property owned by it was not exempt from ad valorem real estate taxes for the year 1957. The trial court found that such property, which is situated on the shore of Lake Minnetonka and separated by a distance of 22.6 miles from defendant's hospital and nurses' home, was not devoted to a use which is essential and reasonably necessary in the accomplishment of defendant's purposes as a public hospital; in the accomplishment of any purely public charitable purpose; or in the accomplishment of the purpose of an educational institution within the meaning of the tax exemption provisions of Minn. Const. art. 9, § 1, and laws of the state, § 272.02, and hence was not exempt from taxation.

The facts with reference to defendant's acquisition and use of the property are as follows: In 1916 Fairview Hospital organized and commenced operation of a school of nursing which has continued down to the present time. It offers both a 3-year and 4-year course in nursing. Students for the most part come from outside the Minneapolis and St. Paul area. Shortly after organizing the nursing school, defendant acquired the property here in question. One of the deeds to part of the property provided that it should be known as a home for nurses. At that time a large two-bedroom cottage was located on the premises. In 1950 or 1951 defendant invested substantial funds in remodeling and altering this structure so that its student nurses and faculty, as well as its staff and administrative employees, might make full use of it. As remodeled, it can presently accommodate from 16 to 18 students overnight.

In 1929 defendant constructed a six-story nurses' dormitory adjacent to the hospital in Minneapolis, and an educational unit adjoining the hospital was completed in 1958. The student nurses com-

bine a class- and work-week of 40 hours. They also have outside assignments. The faculty consists of 17 persons, approximately one-third of whom hold masters' degrees. In addition, practicing physicians are engaged to teach various courses in the school. At the completion of the 3-year course a student nurse receives a R. N. in nursing. The 4-year course, conducted in conjunction with St. Olaf College, offers a degree of bachelor of arts from the latter.

Since 1918 defendant has used the Minnetonka property for its school of nursing. It is used by students therein for rest, recreation, relaxation; as a place to hold seminars; and for meetings with the faculty. It has been designed to be a student center and is used occasionally by surgeons for meetings and by department heads for seminars pertaining to the curriculum and by students for seminars pertaining to rules and regulations of the school of nursing.

Athletic facilities such as boats, bicycles, and badminton equipment are available there for students. Swimming and like recreations are commonly engaged in there by them. The hospital pays for all food and other expenses required in connection with the operation of this property. No charges of any kind are made to the students for its use. It is conducted entirely without profit for defendant.

On December 15, 1947, defendant's board of directors adopted the following resolution:

"* * * it is hereby resolved that the * * * cottage shall be under the charge of the School of Nursing at Fairview Hospital and subject to the rules and regulations adopted by the school, but provided, however, that it is understood that said cottage shall be for the use of the students in the School of Nursing; that such classes as may be deemed advisable shall be conducted there, and that the same shall be used in carrying on the health program for the nurses."

■ Whether the described real property of defendant is exempt from taxation is governed by Minn. Const. art. 9, § 1, which provides:

"* * * Taxes * * * shall be levied and collected for public purposes, but * * * public hospitals, academies, colleges, universities, and all seminaries of learning, all churches, church property and houses of worship, institutions of purely public charity, and public property

used exclusively for any public purpose, shall be exempt from taxation * * *";

and Minn. St. 272.02, which provides in part:

"All property described in this section to the extent herein limited shall be exempt from taxation:

\* \* \* \* \*

"(3) All public hospitals;

"(4) All academies, colleges, and universities, and all seminaries of learning."

■ It is not disputed that defendant is a public hospital and seeks exemption solely under that classification rather than as a seminary or academy of learning. The tax-exempt status of defendant's real property when used for its purposes as a public hospital appears well established. Fairmont Community Hospital Assn. Inc. v. State, 221 Minn. 107, 21 N. W. (2d) 243; Village of Hibbing v. Commr. of Taxation, 217 Minn. 528, 14 N. W. (2d) 923; State v. H. Longstreet Taylor Foundation, 198 Minn. 263, 269 N. W. 469; State v. Browning, 192 Minn. 25, 255 N. W. 254.

Of course, to justify exemption it must be established that the property involved is devoted to and reasonably necessary for the accomplishment of the purposes of the institution seeking exemption. Christian Business Men's Committee v. State, 228 Minn. 549, 38 N. W. (2d) 803; State v. Carleton College, 154 Minn. 280, 191 N. W. 400. It is not required, however, that the use of the property for which exemption is claimed be *essential or indispensable* to the principal purposes of the institution; or that the location of the property be adjacent or even in close proximity to the central structures of the institution claiming exemption. Thus, in construing language in the statute (G. S. 1878, c. 11, § 5) from which Minn. St. 272.02 was derived, and which defined property of educational institutions exempt from taxes as including "the grounds attached to such buildings, necessary for their proper occupancy, use and enjoyment," this court stated in Ramsey County v. Macalester College, 51 Minn. 437, 440, 53 N. W. 704, 705, 18 L. R. A. 278:

"* * * This word 'necessary' should not be read in its strictest sense, restricting the exemption to the land actually occupied by such college buildings as are devoted to the purposes of class rooms, lecture rooms, libraries, and the accommodation of students. This language has this broader meaning, viz., '*reasonably* necessary or appropriate for the proper occupancy, use, and enjoyment of the institution.' "

Likewise, in State v. Carleton College, 154 Minn. 280, 284, 191 N. W. 400, 402, we said:

"* * * In every city of any magnitude, the demand for more school buildings and more extensive grounds to be used in connection therewith is increasing. With this situation in mind, should strict rules of construction be applied to the tax exemption of private institutions doing the very work the state deems so imperative * * *? We think not.

* * * * *

"All authorities agree that when an institution is exempted from taxation this includes all its property devoted to and reasonably necessary for the accomplishment of its purposes. * * *

* * * * *

"Decisions from other states show that mere separation from the campus is of no significance in determining whether the property of an educational institution is tax free. * * * [Cases cited.]"

See, also, People ex rel. Watchtower Bible and Tract Society, Inc. v. Haring, 8 N. Y. (2d) 350, 170 N. E. (2d) 677.

■ Generally speaking, it can scarcely be disputed that a school of nursing is reasonably necessary, if not essential, for the functions of a public hospital, and that the use of a structure for recreational facilities for such a school is well within the concept of its normal operation designed for the education and training of competent and experienced nurses for the parent hospital. In support of this theory defendant cites Diehl and Boynton, Healthful Living for Nurses, p. 2, as follows:

"An adequate program of health service and medical care can do much to decrease the amount of illness and time lost among nurses in our hospitals. Such a program should include: (1) provision for

health service; (2) healthful living conditions; (3) schedules of work that are not too strenuous; (4) an adequate diet; (5) protection against unnecessary exposure to communicable diseases; (6) *proper facilities for recreation and relaxation.*" (Italics supplied.)

Under the above principles, it seems clear that defendant's Minnetonka property should be exempt from taxation. The basic argument for tax exemption which points to the public needs supplied by private educational institutions applies with equal force to institutions classified as public hospitals, and when, as here, the institution involved supplies both the need of education in nursing and the need of hospital facilities for the public, the force of such argument is doubled.

■ In line with these general principles, the status of tax-exempt property, part of which was devoted to such recreational facilities, has been upheld in numerous decisions from other jurisdictions. Cedars of Lebanon Hospital v. County of Los Angeles, 35 Cal. (2d) 729, 221 P. (2d) 31, 15 A. L. R. (2d) 1045 (tennis court); House of Rest v. County of Los Angeles, 151 Cal. App. (2d) 523, 312 P. (2d) 392 (home used for missionaries on furlough); People ex rel. Pearsall v. Catholic Bishop, 311 Ill. 11, 142 N. E. 520 (baseball field, tennis courts, and private lake for swimming, boating, and skating); Assessors of Dover v. Dominican Fathers Province of St. Joseph, 334 Mass. 530, 137 N. E. (2d) 225 (baseball field, swimming pool); Sisters of Mercy v. Town of Hooksett, 93 N. H. 301, 42 A. (2d) 222 (golf course); People ex rel. Alumnae Assn. Mt. Sinai Hospital School of Nursing v. Rizzardi, 273 App. Div. 1024, 79 N. Y. S. (2d) 245 (vacation and rest home); Corporation of Sisters of Mercy v. Lane County, 123 Ore. 144, 261 P. 694 (tennis court); Y.M.C.A. of Pittsburgh Tax Case, 383 Pa. 176, 117 A. (2d) 743 (bowling alley).

In view of the fact situation presented here, and under the principles above set forth, we cannot escape the conclusion that the property of defendant involved in these proceedings is entitled to tax exemption as reasonably necessary and used for defendant's principal purposes.

The order appealed from is reversed.

Reversed.

Mr. Justice Rogosheske, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.