CONCORDIA COLLEGE CORPORATION v. STATE.

120 N. W. (2d) 601.

March 15, 1963—No. 38,800.

*Dosland & Dosland,* for appellant.

*Walter F. Mondale,* Attorney General, and *Vance N. Thysell,* County Attorney, for respondent.

SHERAN, JUSTICE.

The appeal is from a judgment of the district court determining that certain real estate in the city of Moorhead, Minnesota, owned by Concordia College Corporation and designated as 507 South 10th Street is not presently entitled to tax-exempt status.

Statutory proceedings for judicial determination of tax exemption (Minn. St. 278.01) with respect to the realty here involved were instituted in behalf of Concordia College Corporation by a petition, the essential averments of which are as follows: Petitioner is a seminary of learning incorporated under the laws of the State of Minnesota and engaged in conducting and operating Concordia College at Moorhead. It is a coeducational, liberal arts college operated wholly as a seminary of learning and not for any profit. The real estate involved (and other tracts not now relevant) is located in the city of Moorhead and consists of a dwelling house located several blocks from the college campus. It is devoted to and reasonably necessary for the accomplishment of the purposes of the college as a seminary of learning, being used by the institution to provide temporary housing for faculty members who have not been able to find suitable housing immediately after accepting positions at the college.

The matter came on for trial before the district court without further pleading pursuant to § 278.05, which provides in part:

"* * * The court shall without delay summarily hear and determine the claims * * * made by the petition and shall direct judgment accordingly, and the trial thereof shall disregard all technicalities and matters of form not affecting the substantial merits."

At the hearing it was stipulated in behalf of the state that Concordia College is, as stated in the petition, a coeducational, liberal arts col-

lege operated wholly as a seminary of learning and not for any profit. The claim of the college that the house in question is reasonably necessary for the accomplishment of the purposes of the college was submitted to the court as a fact question. In support of the petition, President Joseph L. Knutson and Comptroller William A. Smaby of the college were called to give testimony. There was no evidence introduced by the state to oppose or contradict the information given the court by these witnesses.

Dr. Knutson testified that there are approximately 100 full-time professors and 12 or 14 part-time teachers giving instruction at the school. He was asked:

"Q. Do you find that it is necessary for your college purposes to have available residences for prospective professors?

"A. Correct. We are always under pressure for that. There can be sudden changes in the roster of a college faculty and sometimes you have to get a man in a hurry and it is very desirable that we have space. Also, since we have had such rapid growth, our enrollment has doubled in a period of about two years, we have to add faculty members constantly, generally young faculty members, and fellows coming out of graduate school often times are not in a position to make a down payment on a home, so that it has been a tremendous help to them as well as to the college to have some housing that we can use in this matter.

\* \* \* \* \*

"Q. So you would say that one of the necessities of the college is to have such housing available from time to time for an incoming or visiting professor?

"A. Yes, sir.

\* \* \* \* \*

"Q. In the case of bringing in temporary relief do you find that housing such as this is necessary for the needs of the college?

"A. Yes. We should have more. I think most colleges have housing of this kind."

The house located at 507 South 10th Street was obtained by be-

quest from Ida M. Anderson, deceased, formerly a professor of mathematics at the college. With respect to the house, Dr. Knutson testified:

"Q. And that residence, is that rented to the general public by the college?

"A. No.

"Q. How is that property used by the college?

"A. Well, during the last nine years there have been five different professors who have occupied the Ida M. Anderson house.

    *  *  *  *  *

"Q. Do you feel it is a necessary part of your college function to have and maintain such property?

"A. Yes, sir, very much so.

"Q. In other words, it makes it easier for you to obtain qualified professors and teachers if you have suitable living quarters available?

"A. That is right.

"Q. And this house has been used ever since the college acquired it for such purpose?

"A. That is correct."

Upon cross-examination of Dr. Knutson, the following questions were asked and answers given:

"Q. This house has been rented for a period of nine years to professors of the college?

"A. Yes; longer than that, but I said that during the past nine years there have been at least five different professors and their families who lived in this house.

"Q. Mr. Haukebo was a professor of education at the college?

"A. That is right.

"Q. Did his contract with you require that he live close to the campus or on the campus?

"A. No.

"Q. He was like many of the professors, he could live wherever he wanted to in the city and there was no requirement on the part of the college that he live there or anywhere, is that right?

"A.   That is right.

"Q.   He was also on a lease basis, whether oral or written, paying so much for this house?

"A.   Correct.

\*   \*   \*   \*   \*

"Q.   Your purpose in keeping this house was not so that the professors could counsel with the students but primarily so that new professors coming in could have immediate housing, is that correct?

"A.   That is correct.

"Q.   And the professors who occupied this house did not have this rent deducted from their salary but they were paid a full salary and they paid a rental to the college, is that correct?

"A.   That is correct."

Upon redirect examination the following testimony was given:

"Q.   Do you feel that such a house is reasonably necessary for your college activities?

"A.   Yes; I do.

"Q.   That, of course, would be true of the property known as 3-E, the Anderson house, also?

"A.   Yes; that is right.

"Q.   Having them available sometimes makes the difference between getting a professor you want and not getting him?

"A.   Yes, sir.

"Q.   And to that extent it is reasonably necessary for your college use?

"A.   That is correct."

The house involved is located approximately three blocks away from the northeast corner of the campus. The rental charge is approximately $75 per month. There is no requirement in the employment contract of the faculty occupants of the house that they live on or near the campus. The college owns a total of three houses which are made available to members of its faculty. The professors who use the houses are encouraged to find other permanent housing but the college, according to Mr. Smaby, its comptroller, feels "that it is

a distinct advantage to have a place to put them in until they have an opportunity to look around and find suitable housing." There is a turnover in professors estimated from four to ten annually. Most of these professors, however, are located in houses not owned by the college. On cross-examination, Mr. Smaby testified:

"Q.   But it would not be necessary, and most of the other people do find residential places to live themselves without assistance from the college, is that right?

"A.   Well, some of them do and some of them don't. It has been a distinct advantage to us to have a place to put them during these years of adjustment."

Upon redirect examination he was asked the following questions and gave the following answers:

"Q.   You mentioned that just this last year the college saw fit to purchase a house across the street from the campus?

"A.   That is correct.

"Q.   Why did the college buy that house?

"A.   For faculty housing.

"Q.   In other words, they felt compelled to buy and did buy another place for faculty housing?

"A.   That is correct.

"Q.   So it is a policy of the college if they feel it is necessary to have some of this housing available as part of their college facilities?

"A.   Yes, sir.

"Q.   To properly conduct and operate the college?

"A.   That is right."

Upon the testimony so adduced, the trial court found the following facts:

"* * * The property described in paragraph 3(e) at 507 South Tenth Street was a gift to the college and is removed from the main campus. Its availability has been a convenience to the college. President Knutson testified that neither * * * or #3(e) were necessary to the operation of the college. Either may become so at a future time. The aforesaid properties are currently on the assessment roll. We must

judicially notice that there are many houses and apartments available throughout Moorhead."

The court concluded that the residence at 507 South 10th Street is not presently entitled to tax-exempt status and is properly upon the assessment rolls and ordered judgment accordingly.

After entry of judgment, the college moved the court for amended findings, requesting that there be added to the findings a statement of fact "that said properties were, in fact, used by the college for housing professors and that the same was for the convenience of the college," and that the conclusions of law be altered to show that the realty is entitled tax-exempt status and to removal from the assessment rolls. There was no alternative motion for a new trial. The motion was based upon the ground that the evidence produced at the trial shows conclusively that the realty involved is entitled to tax-exempt status. The motion was denied and petitioner appeals from the judgment.

■ Minn. Const. art. 9, § 1, provides in part as follows:

"* * * [P]ublic burying grounds, public school houses, public hospitals, academies, colleges, universities, and all seminaries of learning, all churches, church property and houses of worship, institutions of purely public charity, and public property used exclusively for any public purpose, shall be exempt from taxation, * * *."

Minn. St. 272.02 provides in part:

"All property described in this section to the extent herein limited shall be exempt from taxation:

"(1) All public burying grounds;

"(2) All public schoolhouses;

"(3) All public hospitals;

"(4) All academies, colleges, and universities, and all seminaries of learning;

"(5) All churches, church property, and houses of worship;

"(6) Institutions of purely public charity;

"(7) All public property exclusively used for any public purpose."

Real estate owned by a college is entitled to the tax exemption if, but only if, the real estate is devoted to and reasonably necessary for

the accomplishment of its educational purposes. State v. Carleton College, 154 Minn. 280, 191 N. W. 400. Although the petition alleges that the real estate here involved was devoted to and reasonably necessary for the accomplishment of the purposes of Concordia College, no finding on this particular point was made by the trial court. While conceivably the finding that President Knutson had testified that the house was not necessary to the operation of the college might, in a proper case, be construed as a finding that the house was not devoted to and reasonably necessary for the accomplishment of the educational purposes of the college, such a construction is not permissible here where the testimony of Dr. Knutson previously set out demonstrates his views to be otherwise. In similar situations the supreme court has remanded the case to the trial court for vacation of the judgment and for additional findings relating to the matters involved, and for further evidence thereon, if deemed advisable by the trial court. Inland Products Corp. v. Donovan Incorporated, 240 Minn. 365, 62 N. W. (2d) 211; Prior Lake State Bank v. Groth, 259 Minn. 495, 108 N. W. (2d) 619; National Cab Co. v. Kunze, 182 Minn. 152, 233 N. W. 838; G. N. Ry. Co. v. City of St. Paul, 61 Minn. 1, 63 N. W. 96, 240; Baumgartner v. Corliss, 115 Minn. 11, 131 N. W. 638.

■ Petitioner, in its brief, states the legal issue involved in this appeal to be:

"Is a residence three blocks from the main campus and which is owned by a College which is a Seminar of learning and rented to a professor of that College, exempt from real estate taxation?"

The state, in its brief, has, in substance, accepted this statement. Although the evidence as to whether this house is devoted to and reasonably necessary for the accomplishment of the educational purposes of the college is not sufficiently complete to require this court's determination of that fact issue as a matter of law on the present record, State v. McCoy, 228 Minn. 420, 38 N. W. (2d) 386, the arguments presented by the parties on the merits of the issue prompt reference to the decisions of this and other courts which will be helpful guideposts in the event the trial court exercises its discretion in favor of tak-

ing additional testimony with respect to the allegations of the petition for exemption.

Where it has been determined that the institution involved is an academy, college, university, or seminary of learning, the constitutional and statutory provisions are construed less strictly than other tax-exemption provisions since the policy of the state has consistently been to encourage the establishment of private educational institutions. State v. Carleton College, 154 Minn. 280, 191 N. W. 400; State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882; Graphic Arts Educational Foundation, Inc. v. State, 240 Minn. 143, 59 N. W. (2d) 841. But the mere fact that the rental received from real estate owned by a tax-exempt institution is used exclusively for the needs of such institution does not give the rent-producing property tax-exempt status. Christian Business Men's Committee v. State, 228 Minn. 549, 38 N. W. (2d) 803; State v. Union Congregational Church, 173 Minn. 40, 216 N. W. 326; Trustees of Pillsbury Academy v. State, 204 Minn. 365, 283 N. W. 727. The physical separation of a residence from the principal situs of a tax-exempt institution does not, of itself, preclude exemption. In State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 22 N. W. (2d) 642, a residence furnished to an executive director of a general church organization was held exempt although located about 5 miles from the corporation's principal place of business. In State v. Fairview Hospital Assn. 262 Minn. 184, 114 N. W. (2d) 568, a recreational center for student nurses was considered exempt although 22 miles away from the hospital. Residences erected for the professors of the faculty on college land near but not on the main campus were held exempt from taxation in Ramsey County v. Macalester College, 51 Minn. 437, 53 N. W. 704, 18 L. R. A. 278. While the property to be exempt must be reasonably necessary for the accomplishment of the purposes of the institution seeking exemption, it is not required that it be essential or indispensable to such purposes. State v. Fairview Hospital Assn. *supra.* Whether the occupant of the house pays rent or suffers the rent to be deducted from his salary or receives possession of the premises gratuitously does not of itself determine the question of the required

relationship between the use of the realty and the exemption afforded by the law. State v. Carleton College, *supra*.

From a review of the decisions of the Minnesota Supreme Court and of the courts of other jurisdictions[1] it can be seen that the question of reasonable relationship between the purposes of the institution and the use of the property and the necessity thereof is generally a question of fact to be determined initially by the trial court. State v. Willmar Hospital, Inc. 212 Minn. 38, 2 N. W. (2d) 564. Numerous factors are relevant for consideration in arriving at such a decision including the following:

(a) *Expressed intent.* While the motivation of the educational institution as expressed by its administrative leaders is not conclusive, such expressions are entitled to careful consideration and will not be rejected without good reason. State v. Carleton College, *supra*.[2]

(b) *History of acquisition and use.* If a residence is built by an educational institution in order to provide housing for a faculty member, Ramsey County v. Macalester College, *supra*, or if the dwelling is purchased in order to fulfill a need of this kind, the necessity of such a dwelling in relation to the objects of the educational institution appears more clearly than in cases where the realty is obtained by gift or devise not prompted by such need.[3] If during the ownership of

---

[1] A more restricted exemption has been noted in states where it is required that the property be used "exclusively" for the tax-exempt purpose. People ex rel. Kelly v. Avery Coonley School, 12 Ill. (2d) 113, 145 N. E. (2d) 80.

[2] "* * * The dominant purpose of the managing officers of the corporation, in the use of the property which they direct or permit, is often, although not always, controlling. So long as they act in good faith and not unreasonably in determining how to occupy and use the real estate of the corporation, their determination cannot be interfered with by the courts." Emerson v. Trustees of Milton Academy, 185 Mass. 414, 415, 70 N. E. 442. See, also, Troy Conference Academy v. Town of Poultney, 115 Vt. 480, 66 A. (2d) 2.

"* * * Courts will not readily interfere with the judgment of the governing body of an educational institution as to what is for its best interests financially or otherwise." State v. Carleton College, 154 Minn. 280, 286, 191 N. W. 400, 403.

[3] "* * * Some discretion must be given to the governing authorities of

a house by the educational institution involved it has been used continuously and exclusively by a member of the faculty, the need of such ownership appears more clearly than is the case if the house in question is used sometimes by a faculty member and sometimes for other and unrelated purposes.

(c) *Necessity.* If the employment market is such that provision for housing is needed to secure faculty members, the college's need for such accommodation becomes clear. If adequate teaching staff can be obtained without such inducement, ownership of the home by the college for this purpose would not be essential.[4]

(d) *Rental arrangement.* If the tenancy of the faculty member is at will or from month to month or during his service as a member of the faculty, the lease is consistent with the theory that faculty housing is needed. Where the tenancy is wholly unrelated to the function of the tax-exempt institution, the realty is taxable. See, State v. Union Congregational Church, *supra.* While the mode by which rent is paid, that is, whether it is deducted from the salary of the faculty member

---

the institution to determine what buildings are necessary or proper to further their educational objectives. The fact is that the dwellings were erected by the college authorities for college purposes, * * *." Elder v. Trustees of Atlanta University, 194 Ga. 716, 723, 22 S. E. (2d) 515, 519, 143 A. L. R. 268, 273. See, also, White v. Smith, 189 Pa. 222, 42 A. 125, 43 L. R. A. 498; Phillips Academy v. Andover, 175 Mass. 118, 55 N. E. 841, 84 L. R. A. 550.

[4]"* * * In the instant case evidence was presented that in the competitive market for good faculty it would be difficult for the appellant to obtain competent faculty members without the provision of such facilities; * * *. We think that in order to efficiently conduct and supervise a modern college, a competent faculty is an essential part of the whole and to obtain this objective they must be located in or near its grounds." Church Divinity School v. County of Alameda, 152 Cal. App. (2d) 496, 506, 314 P. (2d) 209, 215.

"* * * In all fairness, we may take notice of the fact that colleges will find it difficult to obtain teachers unless they can provide or find living quarters for them." People ex rel. Clarkson Memorial College of Technology v. Haggett, 191 Misc. 621, 627, 77 N. Y. S. (2d) 182, 188, affirmed, 274 App. Div. 732, 87 N. Y. S. (2d) 491, affirmed, 300 N. Y. 595, 89 N. E. (2d) 882.

or paid directly to the educational institution, is not determinative, it is important to consider whether the rent received, if any, is comparable to rentals charged for like property in the community. If a lesser amount is charged than the realty would ordinarily bring on the open market, the likelihood is suggested that the maintenance of such a house for faculty members is reasonably required by the institution to accomplish its educational objectives. On the other hand, if the rent charged for the housing facilities is equal to or greater than that charged in the community for like housing, the inference may be that the educational institution has ownership of such real estate for purposes of raising revenue rather than for purposes of accommodating faculty members. See, Christian Business Men's Committee v. State, *supra.*

(e) *Use of the real estate.* If the housing accommodations are used only to provide a place of residence for a faculty member and his family, the inference of a relationship between the educational objectives of the institution and the ownership of the realty is more obscure than is the case if the realty is used also as a place where functions of the educational institution are carried out, as for example, receptions and meetings. If students have access at certain times to the house for consultation with the faculty member occupying it, an inference of reasonable necessity is more apparent than is the case if such access is not available.

(f) *Location.* While the location of the house is not necessarily determinative of the issue of tax exemption, it is evident that housing on the campus or near the campus to the extent that it brings the faculty member closer to the students being educated is a fact more persuasive of tax-exempt status than is the case where the house is so far removed from the campus as to make these points of contact difficult or impossible.

(g) *Housing availability.* If faculty housing is wholly unavailable in the area of the institution where the teaching is to be conducted, the procurement of faculty housing either on or near the campus by the administration of the institution seems essential. Ramsey County v. Macalester College, *supra.* On the other hand, if there is, or over a reasonable period of time has been, other housing of a suitable na-

ture adequately located which can be obtained by the faculty member at rent permitted by the salary which the educational institution is able to afford, the necessity from the standpoint of the college for the maintenance of such housing accommodations is more tenuous.[5]

(h) *Occupant's duties.* If under the employment arrangement between the faculty member and the educational institution his presence on or near the campus is required or preferred, the need of such housing by the school is more clear than if duties of this nature are not involved.[6]

The evidence as disclosed by the record gives some information on the relevant factors. Dr. Knutson, president of the college, expressed the view that the ownership of the housing is reasonably necessary in

---

[5]"In considering whether property is occupied so as to be exempt, regard may be had, amongst other things, to the situation of the institution. If, for instance, it is so situated that desirable residences are not or may not be easily obtained, * * * this may be taken into account in determining whether the occupancy is for the purposes for which the institution was incorporated." Phillips Academy v. Andover, 175 Mass. 118, 124, 55 N. E. 841, 842. See, also, Elder v. Trustees of Atlanta University, 194 Ga. 716, 723, 22 S. E. (2d) 515, 519, 143 A. L. R. 268, 273.

[6]When we have "occupancy by the faculty without rent, and under circumstances rendering their occupancy and use incidental to their relation to the college under contracts for their personal services, the ordinary relation of landlord and tenant [is] not created. * * * their convenience, as affected by the use of these residences in the immediate vicinity of the college, was associated with the performance of duties in behalf of the institution; duties which would seem to render it highly expedient that they should reside near the college. * * * No more need be said to suggest to the mind the reasonable necessity that those upon whom rests the direction of affairs in the ordinary government and work of the college should have the advantage of residence in immediate vicinity to the college. *A reasonable means of securing this advantage is for the college to provide residences for its faculty * * *.*" (Italics supplied.) Ramsey County v. Macalester College, 51 Minn. 437, 441, 53 N. W. 704, 705, 18 L. R. A. 278. See, also, Kansas Wesleyan University v. Saline County Commrs. 120 Kan. 496, 243 P. 1055; Midwest Bible & Missionary Inst. v. Sestric, 364 Mo. 167, 260 S. W. (2d) 25; Multnomah School of the Bible v. Multnomah County, 218 Ore. 19, 343 P. (2d) 893.

order to secure and obtain faculty members. Although the realty was obtained by devise, it has been used exclusively by the faculty members since its acquisition approximately nine years ago. The ownership of other houses for faculty members is consistent with the stated purpose of providing new additions to the faculty each year with a temporary place of abode. However, there is no evidence in the record as to the term of the tenancy. The occupant of the house pays $75 per month to the college, but there is nothing to indicate whether the amount so paid is more or less than the reasonable rental value of this housing on the Moorhead rental market. While the evidence is clear that the housing is used exclusively for residential purposes and is located some three blocks distant from the campus, and while the testimony indicates that the duties of the present occupant of the house are not such as to require his presence proximate to the campus, there is no testimony in the record as to the availability of other housing accommodations in the vicinity of the campus. Additional information on this point would have made unnecessary the judicial notice of housing conditions which was embodied by the trial court in his findings.

The judgment from which the appeal is taken is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.