**LIVING WORD BIBLE CAMP, Relator,**

v.

**COUNTY OF ITASCA, Respondent.**

No. A12–0632.

Supreme Court of Minnesota.

April 24, 2013.

G. Craig Howse, Jeffrey C. Thompson, Jacob R. Grassel, Howse & Thompson, P.A., Plymouth, MN, for relator.

John J. Muhar, Itasca County Attorney, Michael J. Haig, Assistant County Attorney, Grand Rapids, MN, for respondent.

## OPINION

DIETZEN, Justice.

*Relator Living Word Bible Camp* (Living Word), a tax-exempt organization, owns property located on Deer Lake in Itasca County (Deer Lake property), for which it seeks to obtain the necessary governmental approvals for use as a summer bible camp and retreat center. At the request of Living Word, the County classified the property as tax-exempt from 2001 to 2007. The County then reclassified the property as taxable as of January 2, 2008. Living Word challenged the reclassification for both the 2008 (payable in 2009) and 2009 (payable in 2010) assessments. The Minnesota Tax Court affirmed the County's reclassification because Living Word had failed to make sufficient progress in obtaining the necessary governmental approvals for its proposed use of the property. Subsequently, Living Word sought certiorari review by this court. We reverse and remand to the tax court for further proceedings.

Living Word is a tax-exempt organization under IRC § 501(c)(3) (2006), which for the past 20 years has operated summer bible camps on leased property in Aitkin County (Aitkin property). In 2000, Living Word acquired the Deer Lake property with the hope of transferring the summer bible camp and retreat center activities from the Aitkin property to the Deer Lake property. From 2001 through 2007, the Deer Lake property was exempt from tax, first as a church and later as an institution of purely public charity under Minn.Stat. § 272.02, subds. 6–7 (2012). Living Word has made efforts to obtain the necessary governmental approvals to use the Deer Lake property as a summer bible camp and retreat center and to obtain a property tax exemption.[1] We turn to those facts.

---

1. The dispute between Living Word, Itasca County, and others over Living Word's planned use of the Deer Lake property has a lengthy history. We focus here only on the relevant procedural history and facts.

In May 2001, Living Word applied to the County to rezone the Deer Lake property consistent with its proposed use. The Itasca County Board denied the application, and Living Word brought a declaratory judgment action challenging that denial. The district court concluded that the County Board's findings denying the application were insufficient, and remanded the matter to the County Board for further findings. On appeal, the court of appeals affirmed. *Living Word Bible Camp v. Cnty. of Itasca,* No. A03–385, 2003 WL 22890070 (Minn.App. Dec. 9, 2003).

On remand, the County Board granted Living Word's application to rezone the Deer Lake property. Thereafter, local residents appealed to the district court, which reversed the County Board's decision. In 2006, the court of appeals reversed the district court and reinstated the County Board's decision to rezone the Deer Lake property. *Newton v. Cnty. of Itasca,* Nos. A05–879, A05–893, 2006 WL 771719 (Minn.App. Mar. 28, 2006), *rev. denied* (Minn. June 20, 2006).

In April 2006, Living Word applied to the County for a conditional-use permit (CUP) and planned-unit-development permit (PUD) to use the Deer Lake property as a summer bible camp and retreat center. Shortly thereafter, local residents filed with the County a petition requesting that an environmental assessment worksheet (EAW) be prepared to evaluate the environmental impacts of the proposed project. The County Board denied the petition, and the residents appealed to the district court. While that appeal was pending, the County Board approved Living Word's CUP and PUD applications, and local residents challenged those decisions in district court. In April 2007, the district court reversed the County Board and ordered that the EAW be prepared, but affirmed the decisions of the County Board to grant the CUP and PUD applications. Both sides appealed.

In July 2008, the court of appeals affirmed the district court's order requiring the preparation of an EAW, vacated the order approving the CUP and PUD applications, and remanded for redetermination once the EAW was completed. *In re the Conditional Use Permit and Preliminary Planned Unit Dev. Applications of Living Word Bible Camp,* Nos. A06–1850, A07–1231, 2008 WL 2245708, at *1 (Minn.App. June 3, 2008). The County prepared the EAW and made it available for public comment in December 2009. In February 2010, the County Board voted to have an environmental impact statement (EIS) prepared for the project.[2]

Since acquiring the Deer Lake property, Living Word has made improvements permitted by existing zoning to facilitate the proposed use of that property as a summer bible camp and retreat center. Specifically, the land has been cleared and surveyed; location of the buildings, driveways, and parking lot have been staked; and an outbuilding was constructed to repair camp equipment. Also, an architect has drafted plans for the camp buildings. Currently, Living Word uses the Deer Lake property

**2.** Living Word brought a declaratory judgment action in district court challenging the County's decision to order the preparation of an EIS, alleging bias and impropriety by one of the county commissioners. That action was pending when Living Word's challenge to the 2008 and 2009 reclassification of the Deer Lake property for tax purposes came before the tax court in June 2010. In its reply brief to this court, Living Word cited to orders the district court issued in its declaratory judgment action. The County moved to strike those references and related discussion as outside the record on appeal. Because of our disposition of this matter, we have not considered the disputed materials, and we therefore deny the County's motion to strike as moot.

for training of its camp counselors and for other administrative work for the summer bible camp and retreat center activities conducted on the Aitkin property.

As noted earlier, Living Word applied for and obtained an exemption from the County for the Deer Lake property for 2001 through 2007, first as a church and later as an institution of purely public charity. *See* Minn.Stat. § 272.02, subds. 6–7. In 2007, the County reclassified the Deer Lake property from tax-exempt to taxable as seasonal-use property effective as of January 2, 2008 (taxes payable in 2009). Living Word filed a timely petition challenging the reclassification on two grounds: (1) that the Deer Lake property was exempt from taxation, and (2) that the Deer Lake property was misclassified. The matter proceeded to trial before the tax court in June 2010. At the time of trial, Living Word's zoning applications and the pending environmental review of the project were incomplete and not administratively final.

Following trial, the tax court issued findings of fact, conclusions of law, and an order affirming the County's classification of the Deer Lake property as taxable in both 2008 and 2009. *Living Word Bible Camp v. Cnty. of Itasca*, Nos. 31–CV–09–1514, 31–CV–10–884, 2011 WL 1303396 (Minn. T.C. Mar. 28, 2011), *aff'd as amended*, 2012 WL 653844 (Minn. T.C. Feb. 24, 2012). The court found, among other things, that Living Word "has had a reasonable amount of time to develop and use the Subject Property—eight years—while receiving a property tax exemption," but is "no closer to commencing its plans to develop the Subject Property than it was at the time of the purchase due to the legal bar to its progress." 2011 WL 1303396, at *5. The court therefore concluded that the Deer Lake property was properly classified as taxable for the 2008

and 2009 assessment years because Living Word "has not demonstrated progress towards developing the Subject Property and it is uncertain whether the Subject Property can legally be developed for [Living Word's] intended use" as a summer bible camp and retreat center. *Id.* at *6.

I.

Living Word argues on appeal that the tax court erred in (1) failing to determine whether it is an institution of purely public charity (IPPC); (2) determining that it did not make sufficient progress in obtaining the necessary approvals for the proposed use of the Deer Lake property as a summer bible camp and retreat center; and (3) determining that its current use of the Deer Lake property, in conjunction with its use of the Aitkin property, fails to satisfy the criteria for a property tax exemption.

■ Generally, we review the tax court's decision denying a property tax exemption to determine whether the tax court lacked jurisdiction, whether the court's decision was justified by the evidence and in conformity with the law, and whether the court committed any other error of law. Minn.Stat. § 271.10, subd. 1 (2012); *see also Eden Prairie Mall, LLC v. Cnty. of Hennepin*, 797 N.W.2d 186, 189 (Minn.2011). Specifically, we review the tax court's findings of fact under a clearly erroneous standard, but we review questions of law de novo. *Under the Rainbow Child Care Ctr., Inc. v. Cnty. of Goodhue*, 741 N.W.2d 880, 884 (Minn.2007).

■ All property is presumed taxable, and the taxpayer has the burden of proving entitlement to a specific exemption. *Id.* at 884; *Camping & Educ. Found. v. State*, 282 Minn. 245, 250, 164 N.W.2d 369, 372 (1969). The Minnesota Constitution exempts from taxation certain uses of property owned by various types of organizations, including "institutions of purely

public charity." Minn. Const. art. X, § 1; *see also* Minn.Stat. § 272.02, subd. 7(a) (setting forth an exemption for an IPPC and identifying factors to consider in determining whether property is exempt from taxation). Essentially, the taxpayer seeking a property tax exemption must prove: (1) that it is an IPPC and (2) that its use of the property is in furtherance of the tax-exempt charitable purpose of the organization. *Christian Bus. Men's Comm. of Minneapolis v. State*, 228 Minn. 549, 554, 38 N.W.2d 803, 808 (1949). The taxpayer must satisfy both prongs to obtain a tax exemption for the property. *State v. Willmar Hosp., Inc.*, 212 Minn. 38, 41–42, 2 N.W.2d 564, 566 (1942)(concluding that taxpayer failed to establish "that [it] devoted the property in question to a purely charitable use" and thus was not entitled to a property tax exemption).[3]

The tax court did not decide the first prong, whether Living Word is an IPPC, because it concluded that Living Word failed to satisfy the second prong, that the use of the Deer Lake property is in furtherance of the tax-exempt charitable purpose of the organization. We therefore begin by considering whether the tax court correctly concluded that Living Word did not use the Deer Lake property in furtherance of a tax-exempt purpose.

## II.

Living Word argues that the tax court erred in concluding that the Deer Lake property does not qualify for a property tax exemption because it is not using that property in furtherance of a charitable purpose. We agree.

It is undisputed that Living Word acquired the Deer Lake property for the proposed use of a summer bible camp and retreat center, and that the proposed use is consistent with Living Word's tax exempt purpose. But the parties sharply dispute whether Living Word is entitled to an ongoing property tax exemption under section 272.02, subdivision 7, when it has failed to obtain the necessary governmental approvals to use the Deer Lake property as a summer bible camp and retreat center. At issue is whether Living Word has made sufficient progress in obtaining the necessary government approvals for its proposed use.

We have previously allowed a property tax exemption under section 272.02, subdivision 7, for a proposed future use of otherwise taxable property. *See Skyline Pres. Found. v. Cnty. of Polk*, 621 N.W.2d 727 (Minn.2001); *Vill. of Hibbing v. Comm'r of Taxation*, 217 Minn. 528, 14 N.W.2d 923 (1944); *State v. Second Church of Christ, Scientist*, 185 Minn. 242, 240 N.W. 532 (1932).

In *State v. Second Church of Christ, Scientist*, we considered the tax-exempt status of real property purchased by a

---

3. Currently, six factors are used to determine whether an organization's activities qualify it as an IPPC. *See* Minn.Stat. § 272.02, subd. 7(a)(1)-(6). Previously, we applied the *North Star* factors to make that determination. *See North Star Research Inst. v. Cnty. of Hennepin*, 306 Minn. 1, 6, 236 N.W.2d 754, 757 (1975); *see also Under the Rainbow*, 741 N.W.2d at 885–86. The Legislature codified those factors in the statute in 2009, making the amendment effective "for taxes payable in 2010 and thereafter." Act of May 16, 2009, ch. 88, art. 2, § 4, 2009 Minn. Laws 1140, 1160–61. Two

assessments are at issue here: the January 2, 2008 assessment (for taxes payable in 2009) and the January 2, 2009 assessment (for taxes payable in 2010). Living Word correctly points out that the tax court failed to apply either the *North Star* or statutory factors to determine whether it qualified as an IPPC. Therefore, on remand Living Word's status as an institution of purely public charity should be addressed using the *North Star* factors for the 2008 assessment, and using the factors in Minn.Stat. § 272.02, subd. 7(a), for the 2009 assessment.

church corporation as the site for new church buildings that it intended to build. 185 Minn. at 243, 240 N.W. at 533. The church purchased the property in 1924, 1925, and 1927. *Id.* at 243, 240 N.W. at 533. In December 1926, the church hired an architect and commenced gathering data and making plans, ultimately deciding that two buildings would be constructed: an administration building and the church. *Id.* at 243, 240 N.W. at 533. The first complete plans were presented in December 1927 and finally approved in March of 1928. *Id.* at 243, 240 N.W. at 533. Construction on the administration building began in May 1930. *Id.* at 243–44, 240 N.W. at 533. The tax court found the property exempt for the years 1927 and 1928, and we affirmed, holding that the land should remain exempt beginning from the 1926 assessment year—4 years prior to any construction—because "[t]ime is usually consumed in making plans and raising funds." *Id.* at 245, 240 N.W. at 533. We reasoned that "an institution of a public or semipublic nature cannot use real property for its buildings or activities until some reasonable time after it acquires title or the right to use such property, especially where building operations requiring large expenditures are involved." *Id.* at 244–45, 240 N.W. at 533. We explained that the "test is the use to which property is devoted, *or about to be devoted.* It is not necessarily the use or nonuse of the property at the exact time when the tax is levied." *Id.* at 244, 240 N.W. at 533 (emphasis added).

In *Village of Hibbing v. Commissioner of Taxation,* we agreed that a private hospital acquired by a charity was exempt from property taxation while it was being remodeled for use as a public hospital. 217 Minn. at 534–36, 14 N.W.2d at 926–27. We noted that

the parties by contract agreed to devote the hospital to use as a public hospital just as soon as that conveniently could be done; that on [the assessment date] the work of adapting and fitting the property for such use was being prosecuted continuously and diligently in good faith; and that a reasonable time only was being consumed for the purpose.

*Id.* at 535, 14 N.W.2d at 927. Indeed, the construction contract had been executed about two and a half months before the assessment date and construction was complete by January of the following year. *Id.* at 529–31, 14 N.W.2d at 924–25. Moreover, as of the assessment date, "substantial" expenditures had been made for construction and for the equipment to be installed in the hospital. *Id.* at 531, 14 N.W.2d at 925.

Finally, in *Skyline Preservation Foundation v. County of Polk,* we considered whether a nonprofit corporation formed to convert a cathedral into a community center was entitled to a property tax exemption for the cathedral as a purely public charity. 621 N.W.2d at 729–31. The tax court granted summary judgment in favor of the county, concluding that Skyline had not performed any charitable services and therefore did not qualify for tax exemption. *Id.* at 731. We reversed, holding that a fledgling organization may, for a reasonable time after its inception, qualify as a purely public charity based on its plans and organizational structure before providing charitable services. *Id.* at 735. But we cautioned that the mere declaration of intent for a proposed future use is not sufficient:

We neither hold nor suggest that an organization can maintain exempt status as a purely public charity indefinitely based only on goals, plans, and projections. An organization may not merely buy and hold property and continue to maintain an exemption as a purely pub-

lic charity based only on planned future use of the property where there is no evidence of efforts to bring the plans to fruition. *To retain exempt status over time an organization must demonstrate progress toward implementing its plans.... If it fails to do so, its property may be reclassified.* *Id.* (emphasis added).

■ In summary, a taxpayer seeking an exemption as an IPPC must show not only that the proposed use of the property is in furtherance of the tax-exempt charitable purpose of the organization, but also that it has made reasonable progress toward implementing the proposed tax-exempt use of the property. We believe that the taxpayer's reasonable diligence in pursuing the necessary prerequisites to the use of the property, including seeking the necessary governmental approvals, is an important consideration. *See Christian Bus. Men's Comm. of Minneapolis,* 228 Minn. at 557–58, 38 N.W.2d at 810 (stating that "[w]hether due diligence has been exercised in adapting the property to a tax-exempt purpose is a question of fact"). Further, the determination of whether a taxpayer demonstrates reasonable diligence necessarily requires consideration of the taxpayer's conduct in pursuing those prerequisites, not the conduct of other entities or persons beyond the taxpayer's control. *See Skyline,* 621 N.W.2d at 735 (requiring an "entity seeking tax-exempt status to provide clear evidence of commitment to the charitable goals described, including, but not limited to, the absence of any actions contrary to such commitment").

■ With these principles in mind, we turn to the decision of the tax court. The tax court rested its denial of a tax exemption for the Deer Lake property on the grounds: (1) that Living Word is legally barred from using that property for a summer bible camp and retreat center, (2) that it has had a reasonable period of time to obtain the required governmental approvals and it is uncertain whether it will ever be permitted to obtain them, and therefore (3) that it is unable to demonstrate reasonable progress towards obtaining the necessary governmental approvals. *Living Word,* 2011 WL 1303396, at *4–6. For the reasons that follow, we conclude that the tax court has misconstrued our case law. We address each of the tax court's reasons in turn.

First, the tax court relied on *Christian Business Men's Committee of Minneapolis v. State,* 228 Minn. 549, 38 N.W.2d 803, to support its conclusion that Living Word is barred by "unresolved legal proceedings" from using the subject property for the proposed use. *Living Word,* 2011 WL 1303396, at *4. But *Christian Business* is factually distinguishable because the denial of the exemption in that case rested largely on the fact that a portion of the property was leased at "a substantial commercial income" during the tax year for which exemption was sought. 228 Minn. at 557, 38 N.W.2d at 810 (emphasizing that a "substantial commercial income may not be enjoyed for any considerable period of time upon the theory that the property will in the future be converted to a tax-exempt purpose"). Here, the Deer Lake property is not leased to others for commercial income, substantial or otherwise, and therefore *Christian Business* is not applicable.

■ Moreover, *Christian Business* is inapplicable for another reason. We concluded in *Christian Business:*

[W]here a corporation or other institution entitled to hold its property exempt from taxation acquires property with the intention of devoting it to a tax-exempt use, the right of exemption carries with

it, as an incident the opportunity to adapt and fit the property for use within a reasonable time in execution of plans or arrangements made for the purpose, but during the period of adaptation the right of tax exemption does not exist if and when the property so purchased yields a substantial commercial income. *Id.* at 557, 38 N.W.2d at 810. Consequently, property acquired by a tax-exempt entity is exempt from taxation for "a reasonable time" while the property is being "adapt[ed] and fit[ted]" for the proposed use. *Id.* at 557, 38 N.W.2d at 810. Because there was no evidence of substantive steps taken to pursue the adaptation of the property for the proposed use, the exemption in *Christian Business* was denied. *Id.* at 557, 38 N.W.2d at 810. Unlike *Christian Business,* Living Word has presented evidence of the steps it has taken to obtain the necessary governmental approvals.

Second, the tax court relied on *Second Church* and *Skyline* to conclude that Living Word has had a reasonable amount of time to obtain the necessary governmental approvals and has failed to do so. But neither *Second Church* nor *Skyline* involved the governmental approval process, and therefore both cases are distinguishable. Seeking adequate funding and remodeling is markedly different from obtaining necessary governmental approvals, particularly when the approval process includes several zoning applications, multiple environmental reviews, and some neighborhood opposition.

Accordingly, we conclude that the tax court erred in deciding that Living Word was not entitled to an exemption because it had not made sufficient progress in obtaining the government approvals necessary for it to use the Deer Lake property for a tax-exempt purpose. The tax court focused only on Living Word's failure to

attain success in the legal proceedings to obtain the necessary government approvals. That focus was too narrow. Indeed, the court did not consider Living Word's reasonable diligence in obtaining the necessary governmental approvals and its steps in preparing the Deer Lake property for future use, both of which are factors that courts should consider in determining whether the property is exempt based on its proposed future use. Consequently, we remand to the tax court to consider whether Living Word has demonstrated reasonable progress toward implementing its plans for use of the Deer Lake property for a tax-exempt purpose.

### III.

■ Living Word next argues that the tax court erred in not considering whether, apart from Living Word's plans for *future* use of the Deer Lake property as a summer bible camp and retreat center, its *current* use of that property is sufficient to support a continued exemption from property taxes. We agree.

It is undisputed that as of 2008 and 2009 (the assessment dates at issue here), Living Word had not used the Deer Lake property as a summer bible camp. But Living Word has used the Deer Lake property for other activities, such as administration of the summer bible camps held elsewhere, the training of camp counselors, and the organization of family and marital retreats. The tax court concluded that those activities could not be considered because the summer bible camps themselves are held on the Aitkin property, which Living Word leases and does not own. In doing so, the court relied on language from *Christian Business* to support its reasoning. We conclude that the tax court has misconstrued our precedent.

■ In *Christian Business,* we stated that for an institution to qualify for a

charitable tax exemption, there "must be a concurrence of *ownership* of the property by an institution of the type prescribed by the constitution and a *use* of the property for the purpose for which such institution was organized." 228 Minn. at 554, 38 N.W.2d at 808. That language was simply a restatement of the long-standing principle that property owned by an exempt entity and leased to others for profit cannot be exempt. *See, e.g., Willmar Hospital,* 212 Minn. 38, 41–42, 2 N.W.2d 564, 566 (observing that "where the property claimed to be exempt is subject to private control and is devoted to substantial use for private profit, it is not exempt"); *State v. St. Barnabas Hosp.,* 95 Minn. 489, 491–92, 104 N.W. 551, 552 (1905)(holding that farm land owned by a nonprofit hospital and leased to others at a profit was not exempt). *Christian Business* did not address the facts presented by this case, namely, an allegedly exempt entity seeking an ·exemption for property it owns, on which it conducts activities that support charitable activities conducted on other property that it leases.

Nor are these circumstances addressed by the statute. Under Minn.Stat. § 272.01, subd. 2(a) (2012), property of a tax-exempt entity that is leased to a for-profit business is subject to a use tax determined as though it were owned by the lessee. Similarly, under Minn.Stat. § 273.19, subd. 1 (2012), property owned by a tax-exempt entity that is leased to another and not taxable under section 272.01, subdivision 2, is considered for tax purposes to be the property of the lessee; that is, if the property is leased to a tax-exempt entity, it remains exempt.

Our decisions have considered exemption claims based on activities conducted on adjacent and nonadjacent property. For example, we have long held that the term "institution" "comprehends not only a building, and the [property] covered by it, but adjacent [property] which is reasonably necessary or appropriate to the purposes and objects in view, and which is used directly for the promotion and accomplishment of the same." *In re Nelson's Addition to Minneapolis,* 27 Minn. 460, 462–63, 8 N.W. 595, 596 (1881) (holding that land used by a public hospital as a wood yard and vegetable garden was exempt from taxation); *see also State v. Carleton Coll.,* 154 Minn. 280, 286–88, 191 N.W. 400, 403–04 (1923) (holding that farmland located adjacent to a college campus and used to produce food for the college dormitories, a women's dormitory, and faculty residences was exempt from taxation as "reasonably necessary for the accomplishment" of the college's purposes); *Ramsey Cnty. v. Macalester Coll.,* 51 Minn. 437, 440–41, 53 N.W. 704, 705 (1892) (holding that faculty residences adjacent to a college were exempt from taxation as "reasonably necessary or appropriate for the proper occupancy, use, and enjoyment of the institution" (citation omitted) (internal quotation marks omitted)); *In re Grace,* 27 Minn. 503, 506, 8 N.W. 761, 761 (1881) (holding that a playground adjacent to a parochial school building was exempt from taxation as "essential to [the] beneficial use and enjoyment" of the school building itself).

In *State v. Fairview Hospital Association,* we extended the exemption to property neither "adjacent or even in close proximity to the central structures of the institution claiming exemption." 262 Minn. 184, 187, 114 N.W.2d 568, 571 (1962). The property at issue in *Fairview* was recreational in nature and was used by the hospital (and its affiliated nursing school) as a student center, for faculty meetings, and for student seminars. *Id.* at 185–86, 114 N.W.2d at 570. Although the property was located more than 22 miles from the hospital, we nevertheless agreed that it

was exempt from taxation because it was "devoted to and reasonably necessary for the accomplishment of the purposes of the institution seeking exemption." *Id.* at 187–89, 114 N.W.2d at 571–72.

In denying Living Word's motion for amended findings, the tax court distinguished *Fairview,* stating the hospital itself "was already exempt," and the hospital "sought an additional tax exemption for nonadjacent property used to support the hospital." *Living Word Bible Camp v. Cnty. of Itasca,* Nos. 31–CV–09–1514, 31–CV–10–884, 2012 WL 653844, at *2 (Minn. T.C. Feb. 24, 2012). In contrast, the court noted, Living Word "does not already have tax exempt property." *Id.*

It is true that our opinion in *Fairview* described the defendant as "a nonprofit or charitable hospital." 262 Minn. at 185, 114 N.W.2d at 569. But nothing in our opinion indicated whether the hospital building or the nursing school was exempt from property taxation. Rather, the focus of our decision was whether the subject recreational property was "devoted to and reasonably necessary for the accomplishment of the purposes of the institution seeking exemption," regardless of whether those purposes were accomplished. *Id.* at 187, 114 N.W.2d at 571.

We therefore conclude that the tax court erred in determining that, because Living Word's summer bible camps are conducted on nonadjacent leased property, its current activities on the Deer Lake property could not be considered in determining whether that use is sufficient to qualify as a tax-exempt use. We remand to the tax court on this issue as well.

### IV.

For these reasons, we conclude that the tax court erred in deciding that Living Word was not entitled to an exemption because it had not made sufficient progress in obtaining the government approvals necessary for it to use the Deer Lake property for a tax-exempt purpose. We therefore reverse and remand to the tax court to consider whether Living Word has demonstrated reasonable progress toward implementing its plans for use of the Deer Lake property for a tax-exempt purpose. On remand, the tax court should also consider whether Living Word's current use of the Deer Lake property, in conjunction with the summer bible camps it conducts in Aitkin County, is sufficient to constitute a tax-exempt use of the Deer Lake property.

The concurrence argues that the record is sufficient as a matter of law to conclude that Living Word has been diligent and made sufficient progress. We acknowledge that on the record before us, it appears that Living Word has demonstrated reasonable progress. But the tax court did not have the benefit of our analysis of controlling case law as it relates to the reasonable progress issue. Based on our deferential standard of review, remand is necessary to allow the tax court to apply the law to the facts before it. *See Healtheast v. Cnty. of Ramsey,* 749 N.W.2d 15, 23–24 (Minn.2008) (remanding to the tax court because the "court did not explicitly apply the principles we announce[d]"); *Care Inst., Inc.–Roseville v. Cnty. of Ramsey,* 612 N.W.2d 443, 450 (Minn.2000)(remanding to the tax court to apply the developments in the law to the county's motion for summary judgment). Moreover, remand is necessary because, if the tax court concludes that Living Word has demonstrated reasonable progress, or established a current tax-exempt use of the Deer Lake property, then the tax court must further consider whether Living Word was an institution of purely public charity as of January 2, 2008, by applying the *North Star* factors, and as of January

2, 2009, by applying the factors found in Minn.Stat. § 272.02, subd. 7(a)(1)-(6).

Reversed and remanded.

PAGE, Justice (concurring).

I agree with the court that the tax court erred when it held that Living Word was not entitled to an exemption because it had not made reasonable progress in obtaining the necessary government approvals for use of the property for a tax-exempt purpose. As the court correctly notes, the key consideration in determining whether a party has made sufficient progress, in a situation such as this one, is the taxpayer's diligence in pursuing the necessary prerequisites to the use of the property.

I write separately only because I disagree with the court's conclusion that remand to the tax court is necessary on this issue. In my view, the evidence in the record reasonably supports only a single conclusion: that Living Word has demonstrated both that it has been diligent in its pursuit of government approvals and has made sufficient progress in obtaining the necessary approvals for use of the property for a tax-exempt purpose. *See Cont'l Retail, LLC v. Cnty. of Hennepin,* 801 N.W.2d 395, 398 (Minn.2011) (stating that we will only reverse a tax court's decision if it is "not reasonably supported by the evidence as a whole"). Indeed, the record details Living Word's extensive efforts to obtain government approvals necessary to use the Deer Lake property as a summer bible camp and retreat center and shows that Living Word has made significant progress in obtaining those approvals. Thus, on this record, no remand is necessary on the issue of Living Word's diligence and reasonable progress, especially considering that neither the relevant facts nor the applicable law will have changed since the tax court's previous consideration of this issue.

Therefore, I would reverse the tax court and remand solely for determination of whether Living Word is an institution of purely public charity. *Christian Bus. Men's Comm. of Minneapolis v. State,* 228 Minn. 549, 554, 38 N.W.2d 803, 808 (1949)(providing that, in order to qualify for a tax exemption, property must both be owned "by an institution of the type prescribed by the constitution" *and* be used "for the purpose for which such institution was organized"); *see also* Minn.Stat. § 272.02, subd. 7(a)(2012).

ANDERSON, G. BARRY, Justice (concurring).

I join in the concurrence of Justice Page.

WRIGHT, Justice (concurring).

I join in the concurrence of Justice Page.